## CLARISSA GARDINER AND WILLIAM F. BOWLING *vs.* RICHARD B. HARDEY AND EDWARD SIMMS.—*December*, 1842.

B and G, as executor and executrix of the deceased husband of G, were sued at law upon a claim passed by the orphans' court. B was returned *cepi*, and confessed judgment in 1835. G was returned *non est*—was arrested on the renewal of the writ, and also confessed judgment in 1836, ignorant of any defence to the action. In 1837, after she had been informed by her co-executor, who had possession of her husband's papers, and after it was too late to move for a new trial, that he had searched her husband's papers, and that no receipt could be found, she determined upon a search herself, and discovered a receipt for the money claimed of her, given nine years before the action at law was instituted. Upon a bill filed to obtain relief, the fact of the receipt being admitted by the answer, and no proof taken to avoid it: HELD, that the judgments against both executors should be stricken out, and the action brought forward by regular continuances for trial.

Where a witness is excepted to in the Court of Chancery, as incompetent, on the ground of interest—as being a defendant to the bill, and as the legal plaintiff in an action at law sought to be enjoined, the court will consider the admissibility of the witness under the circumstances, and not the sufficiency of the objections assigned.

How far can the answer of a co-defendant, the legal plaintiff in an action sought to be enjoined, but who has no interest in the controversy, responsive to the bill, be relied on as evidence for the other defendant, the real party in interest. QR.

Where a defendant answers the interrogative part of a bill, fully and distinctly, as put to him, and then proceeds to allege a variety of facts, not enquired of the bill, nor of which he had been interrogated, to do away the effect of his previous answer, such facts constitute matters of avoidance.

Facts in an answer not responsive to the bill, not sustained by proof, at the final hearing of the cause are entitled to no consideration.

When a defendant, executrix, at law had confessed judgment, and sought to set it aside in equity, for the purpose of obtaining a new trial, on the ground of subsequent discovery of a receipt for the money claimed, the denial on oath of all previous knowledge of the existence of the receipt, and statement of the time and manner of its discovery by the complainant in her bill for relief, she being the custodiary of the papers of her testator, must, in the absence of all proof impeaching its verity, be received by the court as evidence, and weighed in connexion with the other facts in the cause.

Where the circumstances are such as to induce an executrix, desirous of acting in good faith, to confess a judgment against her deceased husband's estate, the subsequent discovery by her of a receipt for the money claimed, of which she was utterly ignorant previously, will enable her to apply suc-

cessfully to a court of equity for a new trial at law, where the defence may be investigated.

One administrator, in no wise assenting thereto, is not liable for the conse- quences of the negligence or misconduct of a co-administrator.

Where executors were sued in a joint writ, but from a failure to arrest one of them, judgments were rendered against them at different terms, and one of them subsequently obtained a decree in equity for a new trial, that court must, to accomplish its own purposes, direct both judgments to be stricken out.

APPEAL from the Equity side of *Charles* County Court.

The bill in this cause was filed on the 27th April, 1837, by the appellants, and alleged, that sometime in the year 1832, a certain *Richard B. Gardiner*, the husband of your oratrix, departed this life without a will; that letters of administration on his estate were granted to your oratrix and *William F. Bowling ;* that to March term of *Charles* county court 1835, two suits were instituted by *Richard B. Hardey, use of Ed- ward Simms*, against your oratrix and orator, *W. F. B.*, as the administrators of *R. B. G.*   One suit was instituted on a single bill, signed and sealed by the said *R. B. G.*, on the 11th March, 1829, payable to *Richard B. Hardey*, two years after date, for $1,815; and the other suit was instituted for the recovery of a balance of $419, appearing to be due from the said *R. B. G.* to the said *R. B. H.*, as his ward, with interest from the 13th June, 1817, true copies of both causes of action as filed in *Charles* county court, are herewith exhi- bited as a part of this their bill of complaint ; that said claims were passed by the orphans' court of *Charles* county, and to both affidavit is attached by *R. B. H.*, of their justness and correctness.   And your orator and oratrix further sheweth unto your honors, that *W. F. B.* was returned *cepi* at March term of *Charles* county court, and that your oratrix was not taken by the sheriff to that term of *Charles* county court; that he appeared by *Peter W. Crain* his attorney to both suits, and when asked by said attorney if he should resist the payment of said claims, he replied, that they appeared to be just, and he was not aware of any defence to be made to said suits, and instructed him to confess judgments in both cases ; that judg-

ments were accordingly confessed by the said attorney, as will appear by short copies of both judgments against said *William F. Bowling*, one of the administrators of *Richard B. Gardiner*, at August term of *Charles* county court, 1835, herewith exhibited as a part of this her bill of complaint; that subsequently, or at March term of *Charles* county court 1836, your oratrix was returned *cepi* to the suits of *R. B. H.*, and was advised by her friends to employ *Peter W. Crain* as her attorney; that upon reaching court and having an interview with *Mr. Crain*, she was much surprised to hear that her co-administrator had confessed judgments in both cases, and communicated to her attorney her distrust of the correctness of said claims; that her late husband, *R. B. G.* had informed her that he had settled with *Mr. R. B. H.*, and that she could not pay the open account unless she was satisfied that it was correct; that her attorney then informed her that the assets of the estate were bound for the payment of the judgments confessed by her co-administrator, and unless she could show the incorrectness of the claim, it would be folly to contest, and that he would investigate the claim and ascertain its correctness; and further, that the single bill and account were both sworn to be correct by *R. B. H.*, who was a reverend minister of the Roman Catholic church, and he concluded that they were correct; that her attorney then addressed a letter to *William L. Brent*, desiring to know the origin of both claims, when he received a letter from *Edward Simms*, informing him that one was for the real and the other for the personal estate, which letter is herewith filed and marked exhibit C, and made a part of this her bill of complaint. That at August term of *Charles* county court 1836, her attorney not knowing of any defence to be made, so as to overreach the judgment confessed by *Bowling*, one of the administrators of *R. B. G.*, and ignorant of any receipt from *R. B. H.* to the said *R. B. G.*, confessed the judgments without making any defence to the same, copies of which judgments are herewith exhibited as a part of this bill. And your oratrix further sheweth unto your honors, that she is not much acquainted with business, indeed she may with truth

affirm, that she is ignorant in the forms of the law, and in consequence of a misunderstanding with her co-administrator, she has received no aid from him, but being convinced and satisfied of the injustice of the claim of *R. B. H.* for the open account, she addressed several urgent letters to her attorney, begging an interview with him, in the hopes of being enabled to satisfy him of its incorrectness and obtaining redress; that said attorney did see her about 1st of April, and fully stated to her the nature of the claims, the manner in which the judgments were confessed, and also his opinion of their correctness, unless she could exhibit some settlement between *Gardiner* and *Hardey*, or a receipt from *Richard B. Hardey* to *Richard B. Gardiner*, his guardian. Your oratrix knowing nothing of business when she with *William F. Bowling* administered on *Richard B. Gardiner's* estate, submitted all the papers to *Mr. Bowling* to examine, expecting that he would communicate to her if there were any important receipts amongst them, but he either did not find the receipt of *R. B. H.* to *R. B. G.* his guardian, or finding it, failed to avail himself of it and did not communicate it to your oratrix; that she then resolved to examine every paper connected with the business of *R. B. G.*, and about the 3rd of April, 1837, and since the confession of said judgments, she found a receipt signed by *R. B. H.* to *R. B. G.*, his guardian, dated 15th of March, 1827, acknowledging the receipt of $3,247.88 in full for the real estate of the late *John F. Hardey*, and in full of dividend of the personal estate of the said *John F. Hardey*, deceased, it being in full, and duly acknowledged the same before *Edmund Turner*, a justice of the peace for *Charles* county, which receipt is herewith exhibited as a part of this her bill. Now your oratrix expressly charges, that she was ignorant of the existence of said receipt at the time the said judgments were confessed, and has not received the benefit of said receipt in consequence of her ignorance of its existence, and that the single bill was evidence and conclusive of all dealings between the parties; and she further represents, that believing the judgments in the single bill to be correct, she has

proceeded to make payments to *Edward Simms*, in addition to the payments endorsed on the bond, to the amount of $750; that the money was paid, to be applied to the judgment in the bond, and expressly directed the credits to be so entered, but against the positive instruction of your oratrix. The said *Edward Simms* has given a receipt in one case without designating in the judgment one receipt to be applied in part payment of both judgments, and the third receipt against the wishes of your oratrix; and in violation of her instructions he has applied to his bond the judgment on the admitted balance, so far back as 1817. This conduct has excited the suspicions of your oratrix, and she has distrusted its correctness, and believes something was rotten, from their wish to credit the judgment on the open account, when she expressly charges her agent, *Mr. Thomas E. Gardiner*, to have it applied to the judgment on the bond, which receipts are herewith exhibited as a part of this her bill. And your oratrix further represents, that said *Edward Simms*, to whose use said judgments are entered, now threatens to issue *fieri facias* on both judgments, all of which is contrary to equity and good conscience. Prayer for an injunction, &c.; that all the money paid by your oratrix may be applied to the judgment on the single bill as directed by her, and until it is so applied, she prays your honors to enjoin and prohibit them from issuing on said judgment, as it would be manifestly unjust; and also of subpœna to the said *Richard B. Hardey* and *Edward Simms;* that the said *Edward Simms* may answer particularly to the application of the payments, and that the said *Richard B. Hardey,* upon his corporal oath, may answer all and singular the matters and things herein contained, as fully and particularly as if he was again interrogated, of and concerning the same; and that he may fully and distinctly answer what consideration passed for the single bill executed by the said *Richard B. Gardiner* to the said *Richard B. Hardey,* for $1,815, and whether or not he executed the receipt herewith exhibited, and purporting to be in full satisfaction to his guardian, and whether said receipt did not include the balance appearing due of $419.65, and for which he has

obtained judgment against the administrator of *Richard B. Gardiner;* and for general relief. This bill was sworn to by *C. G.*

EXHIBIT A,—referred to in the aforegoing bill of complaint: *The Estate of Richard B. Gardiner, deceased,*

To his ward, *Richard B. Hardey,*          DR.

To $419.66, a balance admitted to be due by the accounts of the deceased, and to be allowed upon the production of the proper vouchers.                              $419 66

To interest on the above sum, from the 13th June, 1817, until paid.

This account was verified by the oath of *Richard B. Hardey,* on the 12th December, 1833, and passed by the orphans' court of *Charles* county.

Two years after date, I promise to pay *Richard Benedict Hardey,* or order, eighteen hundred and fifteen dollars, with legal interest thereon, from this date, it being for value received. Given under my hand and seal, this eleventh day of March, eighteen hundred and twenty-nine.

$1,815.00.                              RICHARD B. GARDINER.

Received 23rd August, 1830, five hundred dollars.

$500.                              R. B. HARDEY.

Received 19th of November, 1832, two hundred dollars.

$200.                              RICHARD B. HARDEY.

Received April 12th, 1833, five hundred and seventy dollars on the within note.

$570.                              EDW'D. SIMMS.

*22nd November,* 1833.   Received three hundred dollars.

$300.                              EDW'D. SIMMS.

|  |  |  |  |  |
|---|---|---|---|---|
|  |  |  |  | $1,815 00 |
| Interest on $1,815, for 16 months, 12 days, to 23rd August, 1830. |  |  |  | 148 33 |
| Amount, | - | - | - | 1,963 33 |
| *August 23rd*—By cash, | - | - | - | 500 00 |
| Amount, | - | - | - | 1,463 33 |

Gardiner and Bowling *vs.* Harvey and Simms.—1842.

| | | | | |
|---|---|---|---|---|
| Amount brought forward, | | | - | $1,463 00 |
| Interest for 27 months, to Nov. 19, 1832, | | | - | 196 56 |
| Amount, | - | - | - | 1,659 89 |
| *Nov.* 19*th*, 1832—By cash, | - | - | - | 200 00 |
| Amount, | - | - | - | 1,459 89 |
| Interest fo. 4 months and 23 days, 12th, 1833, | | | | 35 64 |
| Amount, | - | - | - | 1,495 53 |
| *April* 12*th*—By cash, | - | - | - | 570 00 |
| Amount, | - | - | - | 925 53 |
| Interest for 7 months to November 12th, 1833, | | | | 32 75 |
| Amount, | - | - | - | 958 28 |
| *November* 23*rd*—By cash, | - | - | - | 300 00 |

This note and the credits thereon were also verified on the 20th August, 1833, by the oath of *R. B. H.*, and passed by the orphans' court.

EXHIBIT B,—referred to in the aforegoing bill of complaint: *Charles County Court, August Term*, 1835:

RICHARD B. HARDEY, use of Edward Simms, *vs.* WILLIAM F. BOWLING, one of the Adm'rs. of Richard B. Gardiner. Debt. Judg't. for $1,815 debt, and $1,815 dam's. and costs. The dam's. to be released on pay't. of int. on the debt, from the 11th day of March, 1829, until paid. Pl'ffs. admit the receipt of $500 on the 23rd day of August, 1830; the sum of two hundred dollars on the 19th day of November, 1832; the sum of $570 on the 12th day of April, 1833, and the further sum of $300 on the 22nd day of November, 1833, in part.

Cost, $7.30. Test,—JOHN BARNES, Cl'k.

*Charles County Court, August Term*, 1835:

RICHARD B. HARDEY, use of Edward Simms, *vs.* WILLIAM F. BOWLING, one of the Adm'rs. of Richard B. Gardiner. Dam's. Judg't. for $1,500—released on pay't. of $419.66, with interest thereon from the 13th day of June, 1817, until paid.

Cost, $8.90. Test,—JOHN BARNES, Cl'k.

EXHIBIT C,—referred to in the aforegoing bill of complaint:
*Charles County Court, March Term,* 1836:

RICHARD B. HARDEY, use of Edward Simms, *vs.* CLARISSA
GARDINER, Adm'x. of Richard B. Gardiner. Debt. Judg't.
for $1,815 debt, and $1,815 dam's. and costs. The dam's.
to be released on pay't. of int. on the debt, from the 11th day
of March, 1829, until paid. Pl'ff. admits the rec't. of $500
on the 23rd day of August, 1830; the sum of $200 on the
19th day of November, 1832; the sum of $570 on the 12th
day of April, 1833, and the further sum of $300 on the 22nd
day of November, 1833, in part.

    Cost, $6.35.        Test,—JOHN BARNES, Cl'k.

*Charles County Court, August Term,* 1836:

RICHARD B. HARDEY, use of Edward Simms, *vs.* CLARISSA
GARDINER, Adm'x. of Richard B. Gardiner. Dam's. Judg't.
for $1,500, dam's. and costs. The dam's. to be released on
pay't. of $419.66, with int. thereon from the 13th day of June,
1817, until paid.

    Cost, $7.05.        Test,—JOHN BARNES, Cl'k.

EXHIBIT D,—referred to in the aforegoing bill of complaint:

        *Washington,* 10*th May,* 1836.

*Peter W. Crain, Esq. Sir,—Col. Brent* called on me this
morning for explanations respecting the judgments against the
estate of *Richard B. Gardiner;* the open account you will per-
ceive was for amount due *Richard B. Hardey,* for and on account
of balance for the personal estate; the note was given for the
share of the land. All of which I have more fully explained
to *Mrs. Gardiner* when she visited the city last.

    Respectfully yours, ob't.        EDWARD SIMMS.

EXHIBIT E,—referred to in the aforegoing bill of complaint:

Received this 13th March, 1827, of *Richard B. Gardiner,*
my guardian, thirty-two hundred and forty-seven dollars eighty-
eight cents, in full for the real estate of the late *John F. Har-
dey,* deceased, sold under an order of the honorable justices
of *Prince George's* county court. At the same time, received

my full proportion of dividend of the personal estate of the said *John F. Hardey*, deceased, it being in full.

RICHARD B. HARDEY.

Acknowledged by *R. B. H.*, before a justice of the peace.

EXHIBIT F,—referred to in the aforegoing bill of complaint:

(COPY.) *Estate of Richard B. Gardiner, deceased,*

*To his ward, Richard B. Hardey,* DR.

To $419.60, balance admitted to be due by accounts of deceased, - - - - - - - $419 60

To interest on the above sum of money, from the 13th June, 1817, until paid.

Passed by the court. Test,—H. BRAWNER,

*Feb. 13th*, 1833. *Register of Wills for Charles County.*

To amount of the above, with interest to 13th June,

1835, - - - - - - - $872 77

Balance on note to 1st July, 1835, is - - 756 27

$1,629 04

On the back of the above is thus written, to wit:

1835, *Sept. 11th.* Received of *T. E. Gardiner*, two hundred dollars on the within claim, now due from the estate of the late *R. B. Gardiner.* EDW'D. SIMMS.

EXHIBIT G,—referred to in the aforegoing bill of complaint:

*Washington City, 13th January,* 1836. Received of *Mrs. Clarissa Gardiner*, three hundred and fifty dollars, on account of my claim against the estate of *Richard B. Gardiner*, late of *Charles* county, State of *Maryland*, deceased.

$350. EDW'D. SIMMS.

EXHIBIT H,—referred to in the aforegoing bill of complaint:

$200. Received, *Washington, October 22nd*, 1836, of *Thos. I. Gardiner, Esq.*, two hundred dollars, on account of two judgments obtained against the estate of *Richard B. Gardiner*, deceased. EDW'D. SIMMS.

Injunction and subpœna issued accordingly.

At August term 1837, *R. B. H.* filed his demurrer to part, and his answer to other parts of the said bill.   This defendant *R. B. H.*, by protestation as to so much of the said bill as seeks to set aside or impeach, or have any relief against the judgments rendered at *Charles* county court, at August term 1835, in favor of this defendant, for the use of *Edward Simms* the other defendant, against the said *William F. Bowling*, for the sum of, &c., &c., and against the judgment rendered by said court at the August term of the year 1836, in favor of this defendant for the use, &c., against the said *Clarissa Gardiner*, of a like sum of, &c.; or that prays an injunction against this defendant to stop his proceedings at law against the said *Clarissa Gardiner* and *William F. Bowling*, this defendant doth demur thereunto, and for cause of demurrer sheweth, that it appears by the said complainant's own shewing, that the defendant, for the use of the said *Edward Simms*, the other defendant, hath obtained the said judgments complained against on the law side of your honors' court, in due course of law, and this defendant is advised that said judgments cannot and aught not to be called in question in this honorable court; and for further cause of demurrer this defendant sheweth, that there is not, as he is advised, any matter or thing set forth in and by the said bill, as a foundation of equity for this court to interpose in relation to the said two judgments at law, but that all matter and things relative thereto were properly cognizable at law, and that the said complainants cannot now avail themselves in your honors court, the defence as set up by them here, and which was above cognizable upon the said trials at law, when above they could have availed themselves of the benefit of the same, if the same be true, for which reasons, and for divers other causes, this defendant doth demur to so much of the said bill as aforesaid, and humbly prays the judgment of this honorable court, whether he shall make any further or other answer thereto.

And as to so much of said bill as this defendant hath not before demurred to, this defendant in no sort waiving, &c. This defendant, for answer to the residue of the complainant's

said bill, this defendant, speaking for himself, and not for the other defendant, he this defendant doth answer and says as follows : that it is true that letters of administration upon the estate of the deceased *R. B. G.* were granted as stated in said bill to the complainants, and that the suits as stated in said bill were instituted to March term 1835, of *Charles* county court, on the law side, and for the amounts and upon the cause of actions therein stated ; and it is also true, that judgments were confessed in said causes at the several terms of said court, as stated in said bill of complaint, and for the amounts as stated and shewn by exhibits B and C, accompanying said bill, and that final judgments were rendered in said cases at the times stated in said bill. This defendant says, he knows nothing of what conversations were had between said complainants and their attorney, *Peter W. Crain*, esquire, and cannot admit that the conversations stated in said bill did take place ; that it is also true, that *Edward Simms* the other defendant, did write the letters named in said bill, and marked as exhibit D ; it is also true, that this defendant did give the receipt marked E, as an exhibit accompanying the complainant's bill, to his late guardian *R. B. G.*, but under circumstances this defendant will hereafter in this answer disclose and state to your honors. This defendant further states, in answer to the interrogatories put to him in the bill of the complainant's, that the consideration for which the note of $1815 was given, was the balance due for the real estate of this defendant, the amount of which the deceased *R. B. G.* had received as this defendant's guardian when a minor.

This defendant states that he did sign and execute the receipt exhibited with the said bill, and purporting to be in full satisfaction ; and that it did include the said balance appearing to be due of four hundred and nineteen dollars and — cents, and for which one of said judgments was obtained ; but positively denies that said sum of four hundred and nineteen dollars and — cents were paid at that time, before or since, by *R. B. G.*, or any other person, and was never received ; that the time said receipt was given, the said deceased, *R. B. G.*, promised

to meet this defendant at *Upper Marlboro'*, in *Prince George's* county, *Maryland*, some days thereafter, and to pay to him said sum, which was a balance due him on the personal estate, and that he disappointed him, and did not meet him as promised, nor did he ever pay the same, nor any person for him, or any part of the same; that said receipt was made at request of said *R. B. G.*, deceased, in whose promise this defendant had a confidence that induced him to give it under the circumstances he did, and that upon said *R. B. G's.* not complying with his promise, this defendant wrote him, in his life time, one or more letters, stating the fact to him, and complaining of his not doing so, and asking payment, some of which letters are now in the possession of said *Clarissa*, one of the complainants, who found said letters among said *R. B. G's.* papers, after his death; and this defendant is informed by *Edward Simms*, the other defendant, and he believes it to be true, that the said *Clarissa* saw and read said letters among said deceased's papers, in the presence of her said agent *Thomas B. Gardiner*, and *Edward Simms*, one of said defendants, before she filed said bill of complaint, or made affidavit to the same, and that said bill was made by her after she knew that said sum of four hundred and nineteen dollars and — cents had never been paid, and that said receipt was given under the circumstances before stated. And further this defendant says and states, that at the time he gave his said receipt for the amount of his real estate to his said guardian, his said guardian in payment gave him his note of hand for a large amount, and that upon the day of the date of the said note of eighteen hundred and fifteen dollars, his said guardian settled the first note in part with this defendant, and gave him his said note for the eighteen hundred and fifteen dollars, payable in two years from its date, which was the time asked by said guardian, it being the balance due at said settlement for the real estate, and he then then took up the first note; and that said note of eighteen hundred and fifteen dollars was given, a sum for the balance due and unpaid to this defendant on the note first given at date of the aforesaid receipt, and was for the balance due upon the

real estate, and did not embrace the amount due for the personal estate, as before stated. And this defendant denies all and all manner of, &c.

The demurrer of *Edward Simms*, one of the defendants, to part and his answer to other parts of the bill.

The demurrer was the same as that of the other defendant.

This defendant for answer to the residue of the complainant's bill doth say as follows: that he did write the letter D. It is also true, that the other defendant did give the receipt marked E; but that the same were given as this defendant understood and believed, under circumstances he will hereafter name. This defendant further states, in answer to the interrogatories put to him, that he always understood from the different parties connected with the note of eighteen hundred and fifteen dollars; that it was given for a balance due to the other defendants by his late guardian *Richard B. Gardiner*, for the real estate of the said other defendant, being a balance due upon a note for a larger amount, given by said guardian at a prior time for said real estate alone, a part of which prior note was paid at the time said note of eighteen hundred and fifteen dollars was given—and said note of eighteen hundred and fifteen dollars was given for said balance, and the first note taken up. This defendant also states, that he also understood and believes, that the aforesaid receipt did include the said sum of four hundred and nineteen dollars and — cents, but that the same was not paid at the time; but to save multiplying receipts, the said *Richard B. Gardiner* promised the other defendant that if he would include the said sum in said receipt, that he the said *Richard B. Gardiner* would meet him in a short time thereafter, at *Upper Marlboro'*, *Prince George's* county, *Maryland*, and would then pay him the said sum of money, which this defendant says he never did. This defendant, since the death of the said *R. B. G.*, and subsequent to the date of said receipt and note, has seen and read letters from the other defendant to the said *R. B. G.*, shewn to him by the said *Clarissa Gardiner*, and in her possession, and which letters were after the said receipt, and to the best of his recollection, after said notes were given, and

in the life time of said *R. B. G.*, in which the other defendant complained to said deceased, that he had not met him at *Upper Marlboro'* aforesaid, to pay the said sum of money as aforesaid, and which was included in said receipt, after the promise of said deceased to pay the same subsequent thereto, and as aforesaid, and that the said letters were in the proper hand writing of the other defendant.   This defendant being well acquainted with the same, having often seen said other defendant write, and that said letters were received by said deceased, in his life time; and your honors are prayed to order the complainants to produce the same.   This defendant further states, that the said letters were read in presence of said *Clarissa Gardiner,* who gave them to this defendant to read after said judgments were rendered, and before she made her affidavit to the said bill of complaint, and that the agent of said *Clarissa Gardiner, Thomas I. Gardiner,* was present when the same was shewn, and saw and heard them read at said *Clarissa's* own house.   This defendant further states, that his recollection is, that when the agent of said *Clarissa Gardiner* made the payments alluded to in the bill, he did request this defendant to credit them upon the note judgment, and that he stated the sum to be; that said *Clarissa* wished the note judgment to be paid first, but denies positively that said agent or said *Clarissa.* or any one, ever stated that it was because the other judgment was not justly due.   This defendant also positively denies, that he did give the credits on the judgments for the reasons, or with the views stated in the said bill of complaint, or that he ever thought, or had reason to think, that the judgment complained against was not just; but on the contrary, he knew that the said sum of money for which said judgment was obtained, had never been paid.   This defendant also positively denies that said *Clarissa* was ignorant of said receipt at the time said judgments were given, for it was in her possession, as administratrix upon said deceased's estate.   And this defendant further denies that said note is evidence, conclusive and final, of all demands between the parties; and this defendant denies all and all manner of, &c.

The general replication was then filed, and a commission issued to take proof, but no witness was examined except the *Rev. R. B. Hardey,* one of the defendants, who was objected to as incompetent, for the reasons stated in the opinion of this court, and his evidence rejected.

At August term 1841, the cause was set down by consent for final hearing upon the bill, answers, exhibits and proofs taken, the complainants still excepting to the competency of the defendant, *R. B. H.,* as a witness for his co-defendant. The county court (C. Dorsey, A. J.,) dismissed the bill with costs, and the complainants appealed to this court.

The cause was argued before Archer, Dorsey and Chambers, J.

By J. Johnson for the appellants, and
By R. J. Brent for the appellees.

Dorsey, J., delivered the opinion of this court.

Against the making the injunction, perpetual, to the judgments against the appellants as administrators of *Richard B. Gardiner,* each to be released on the payment of $419.66, &c., or to the granting a new trial in the cases in which they were rendered, the testimony of *Richard B. Hardey* has been relied on by the appellee, *Simms,* who insists, that thereby the whole equity of the bill is disproved, and that substantial justice appearing to have been administered to the parties by the rendition of the judgments complained of, the complainants are entitled to relief, neither in the specific mode in which they have sought it by their bill, nor in that in which it has been claimed for them in the argument before this court. But to the admissibility of this testimony, exceptions have been taken, any one of which, if sustained, must exclude it from the consideration of this court. The exception mainly urged, was, that being a party to the suit, his testimony was taken before a commissioner without a previous order of the court for that purpose. In answer to which it has been insisted in behalf of the appellees, that the exceptions filed to the admissibility of

*Hardey's* testimony do not present the point or ground of objection now asserted in this court, and that under the act of 1832, ch. 302, and the decisions of this court, it must affirmatively appear, that the point raised in the Court of Appeals was the point presented to the consideration of the court below, and by it decided. Conceding this doctrine to the fullest extent to which it can reasonably be carried, we think the exception filed below does with sufficient precision present the very points now raised before us. The appellants excepted to the competency of *Hardey* as a witness, upon three several grounds—1st, "because he is interested in the event of the suit. 2ndly, because he is one of the defendants in the suit. 3rdly, because he was the legal plaintiff in the cause." Looking at the three exceptions in connection, what point can it rationally be conceived is raised by the second, unless it be that now urged before this court? But whether it be so or not is wholly immaterial, this court having, on more than one occasion, decided, that on an objection to testimony, the point decided by the court is its admissibility or inadmissibility, not the sufficiency or insufficiency of the reasons assigned for its rejection. The exception, therefore, we think sufficiently pointed, and that the testimony to which it is addressed is excluded by it. See the case of *Jones vs. Hardesty and al*, 10 *G. & J.* 414. On the part of the appellees it is insisted, that the rejection of the testimony taken under the commission issued for that purpose, cannot operate to their prejudice, or in the slightest degree influence the results to which the court must have arrived, had the testimony been rescued from the objections made to its reception. That the same grounds against perpetuating the injunction or granting a new trial at law, are established by the answers of the appellees, as the entire record would have presented, had no exceptions been taken to the testimony. Without stopping to moot the question, how far the answer of a co-defendant, the legal plaintiff in a cause, who has no interest in the subject matter in controversy, can be relied on as evidence for his co-defendant, the real party in interest in the cause, let us see whether the statements in the answers here

pressed into that service, are admissible as evidence to rebut the complainant's equity, as it appears upon the bill, exhibits, and admissions in the answers. The statements alluded to are those given in explanation and avoidance of the receipt of *Hardey*, exhibited with the bill. The question turns entirely upon the inquiry, whether they are responsive to the allegations or interrogatories contained in the bill of complaint. By its allegations, it has not been pretended that these disclosures were responsively drawn from the appellees. But it is alleged, that they were responsive to the interrogatories propounded to *Richard B. Hardey* alone. Upon a careful examination of those interrogatories, we are clearly of opinion, that the statements in the answers relied on as a bar to the complainant's equity, are not responsive to the bill, but matters of defence, set up in avoidance of the receipt, the ground work of the complainant's claim to relief. The bill asserts, that the receipt, as upon its face, it strongly purports, but does not conclusively shew, was given for the same cause of action on which the judgments were rendered. And the interrogatory inquires whether he executed the receipt? "and whether said receipt did not include the balance appearing due of four hundred and nineteen dollars and sixty-six cents, and for which he has obtained judgments" against the appellants? To both of which inquiries he answered distinctly and fully in the affirmative; and then, as matter in defence, and in avoidance of the receipt, proceeded to state a variety of facts, none of which were charged in the bill, and in relation whereto he had not been interrogated. Had the interrogatory called on him to state whether he had not been paid the $419.66, for which the receipt had been given, the door would have been opened to the disclosures he made, and they might well be regarded as impairing the weight attached to the receipt. But not being responsive to the bill, nor sustained by the proof, at the final hearing of the cause, they are entitled to no consideration.

The obstacles alleged to be interposed by the proof and answers to the relief prayed, having been removed, let us examine the next defence which has been set up by the appel-

lees, to wit, that the bill itself does not disclose a case in which it is competent for a court of equity to give any relief. We will first consider this proposition in reference to the judgment complained of, which has been obtained against *Clarissa Gardiner*. The ground upon which her right to relief is denied, is, that she was guilty of such negligence, in not pleading in bar to the judgment recovered, the evidence she now relies on to show that it ought never to have been rendered against her; that a court of equity can give her no aid in avoiding its payment. It is apparent from the record, that at the time she states her discovery of the receipt to her intestate, it was too late, by a motion for a new trial or otherwise, to have made it available, at law, as a defence to the claim for which judgment had been rendered against her. It must also be conceded, that her denial on oath of all previous knowledge of the existence of the receipt, with her statement of the time and manner in which she discovered it, she being the custodiary of the papers of her deceased husband, must, in the absence of all proof impeaching their verity, be received by the court as evidence in the cause, and be weighed in connection with all the other facts established by the bill, answers and exhibits, in forming an opinion upon the appellant, *Clarissa's* claim, to the relief she seeks. If she has not forfeited all claim to the favor of a court of equity, and the testimony of *Hardey*, and the portions of the answers deemed not responsive to the bill, be excluded, it appears to be conceded, that *Mrs. Gardiner* would be entitled to the interposition of a court of equity in her behalf. But it is said, that her statement that her husband had informed her that he had settled the claim of *Hardey*, and her not looking amongst his papers for the receipt, as the evidence of such settlement, before the judgment was rendered, are such acts of negligence, as will deprive her of all favor in the eyes of the Court of Chancery. We do not regard her conduct, under the circumstances of this case, as forfeiting all claim to such favor. It must be remembered, that she was a woman not presumed to have much acquaintance with the nature of the business in which she was engaged; that she was associated in

the administration with a man in whom she had confidence, to whom she confided all the papers of the deceased, and in whose ability properly to administer the assets of the deceased, it is fair to presume, she reposed confidence. The existence of any receipt had never been communicated to her by her husband, or any one else. The claim had been sworn to by *Mr. Hardey*, a minister of the Gospel, and passed by the orphans court of her county, upon the records of which, in all probability, it appears from the guardian's accounts, settled by *Richard B. Gardiner* himself, that the sum claimed was due by him, and that he had never there claimed or been allowed a credit for its payment. In addition to this, the co-administrator, mainly relied on by her in the settlement of the intestate's estate, who was in possession of all his papers, and who the widow had a right to presume had unsuccessfully searched for the evidence of the payment of this claim, had long before confessed judgment for its amount. Would not the instance be rare indeed, where a widow, administratrix, similarly situated, would have pursued a different course from that to which *Mrs. Gardiner* reluctantly yielded? Can we then, consistently with that liberality and justice which always control the decisions of a court of equity, say, that she has been guilty of such negligence, in not defeating at law the judgment which has been rendered; that the doors of a court of equity are forever closed against her, when apart from the imputation of neglect, as far as the proceedings before us permit us to look, she appeals to such a court to give her an opportunity of discharging herself, by a trial at law, from a claim which, as far as the proceedings before us will enable us to look, appears by an admitted receipt in full, to have been satisfied and paid nearly fifteen years ago. Thus, to place her beyond the pale of equitable relief in a case of such apparent injustice and hardship, would, we think, under the circumstances of this case, be inconsistent with the enlightened and liberal principles by which courts of equity are governed. So far from exhibiting that negligence and inattention to her duty as administratrix, which have been imputed to her, she appears to have yielded to the

strong array of circumstances against her, and her utter igno-
rance of the existence of that receipt, by which only the claim
could have been successfully resisted.    Even after the judg-
ment, her suspicions do not appear to have slept.    She called
on *Simms* to obtain all the information she could upon the sub-
ject; and when, subsequently, her suspicions of foul play were
increased by *Simms'* refusing to credit the payments she made
to the judgment, to which she directed their application; as a
last resource, a forlorn hope, she determined herself to search the
papers in the hands of her co-administrator, and on that exam-
ination, the discovery of the receipt took place.    One admin-
istrator, in no wise assenting thereto, is not liable for the conse-
quences of the negligence or misconduct of a co-administrator.
And it would, in this case, be rather a severe measure of justice
to visit on *Mrs. Gardiner* the results which should attach to
the delinquency of *Bowling*.

We are, therefore, of opinion, that *Mrs. Gardiner* is entitled
to have the judgment of which she complains stricken out, and
her case brought up by regular continuances to the ensuing
term of *Charles* county court, where the case is to be tried as
if no judgment therein hadever been rendered.

Having expressed this opinion as to the judgment rendered
against *Clarissa Gardiner*, it follows as a necessary consequence,
that the judgment against *William F. Bowling* must share the
same fate; both judgments being rendered in a joint action
against the two defendants, the same judgment must be ren-
dered against both.    The judgment against *Bowling* must, in
like manner, be stricken out, and the case brought up by con-
tinuances, and both cases be consolidated and tried.

As respects the payments made to *Edward Simms* by *Mrs.
Gardiner*, since the rendition of the judgments against her, this
court will, of course, direct them to be altogether credited on
the judgments rendered against the appellants on the note of
the intestate for $1,815.

DECREE REVERSED WITHOUT COSTS.