JOHN GLENN, TRUSTEE OF
    BENJAMIN CHILDS
       vs.              SEPTEMBER TERM, 1847.
WILLIAM BAKER AND BEN-
    JAMIN CHILDS.

[INSOLVENT LAWS—UNDUE PREFERENCE—RULES OF EVIDENCE.]

To avoid a deed under the acts of 1812, ch. 77, and 1816, ch. 221, it is neces-
sary to show, not only that an undue and improper preference was given by
the debtor, but also, that this was done with a view or under an expectation
of taking the benefit of the insolvent laws.

Such intent may be established by facts and circumstances, as in other cases.

The fact that a party, when he executed the deed, could not apply for the ben-
efit of the insolvent laws, for want of the residence required, to bring him
within their provisions, is a strong circumstance to show that such was not
his view and expectation at that time.

The facts of this case are distinguished from those of Dulaney vs. Hoffman, 7
Gill and Johns., 170.

It is an established rule of evidence in this state, that the answer of one defend-
ant, in chancery, is not evidence against the other defendants.

The answer of one defendant, when responsive to the bill, is *evidence against
the plaintiff* in favor of the other defendants.

Where the rights of the insolvent are identically the same, whether the deci-
sion passes one way or the other, he would be a competent witness for eith-
er party.

[In the year 1833, Benjamin Childs, one of the original de-
fendants, (since deceased,) who had resided in Pennsylvania,
for several years, removed into this state, and engaged in
mercantile business in Baltimore. On the fourth of December,
of the same year, and but a few months afterwards, finding him-
self in embarrassed circumstances, he executed to the defendant,
Baker, a deed of all his estate of every description, in trust, in
the first place to pay the necessary expenses of executing the
trust and five per cent. commission on all moneys received by
the trustee, in virtue thereof; secondly, to pay in full, certain
specified debts; thirdly, to pay in full, or rateably in case of
a partial deficiency of the trust fund, such of the creditors of
the grantor as should in a specified time assent to the terms of
the deed, and release all demands against him to the day of its
date ; fourthly, to the use of the other creditors of the grantor ;

7

and fifthly to pay the surplus to the grantor, his executors, administrators or assigns.   At December session, 1833, Childs applied to the legislature for a special act, which was passed on the 27th February, 1834, authorising the insolvent commissioners to extend to him the benefit of the insolvent laws without requiring the usual proof of a two years residence in the state. His application under this act was made on the 10th March following, and the complainant was appointed his permanent trustee.   Sundry creditors of Childs assented to the terms of the deed, and in consideration of the provisions made in it for the payment of their debts, released and discharge him therefrom. It appeared from the proof that the said Childs was insolvent when he removed into the state and continued so down to the time when the deed was executed, prior to which time there were suits and judgments against him.

The bill was filed by the complainant to have this deed set aside as fraudulent under the insolvent laws, it having been made in contemplation of applying for their benefit.   The answers denied that Childs at the time of executing said deed intended applying for the benefit of the insolvent laws, or that he knew himself to be insolvent, and the separate answer of Childs stated his ignorance, at the time of executing the deed, of the possibility of his obtaining a special act of the legislature in his favor.

The Chancellor, after stating the facts of the case, referred to the cases of *Heckley* vs. *Farmers and Merchants' Bank*, 5 *G. & J.*, 377, *and Crawford & Sellman* vs. *Taylor*, 6 *G. & J.*, 332, to show that the meaning of the acts of 1812, ch. 77, and 1816, ch. 221, making void any deed, &c., to a creditor, made by any person with a view, or under an expectation of being or becoming an insolvent debtor, and with an intent thereby to give an undue and improper preference to such creditor, was, that the party executing the deed, shall at the time, "intend to take the benefit of the insolvent laws."   He said it was necessary to show, not only that an undue and improper preference was given by the debtor, but also that this was done "with a view or under an expectation of taking the benefit of the insolvent laws,"

and as to whether this had been done in this case he said : "It is not contended in this case, nor could it be, that there is any direct evidence, that Childs at the date of the deed, intended to make application for the benefit of the insolvent laws ; but it is said, that such intention may be established by facts and circumstances as in other cases, and the case of *Dulaney* vs. *Hoffman*, 7 *Gill & Johns.*, 170, is referred to in support of the proposition. ، There can be no doubt that such is the rule, and the inquiry then is, whether the facts and circumstances of this case are sufficiently strong to make out the intent.]

THE CHANCELLOR :

Now, whether the answer of Childs is or is not evidence against the plaintiff, there can be no doubt that the burden of proof is upon him, and that he can get no decree invalidating this deed, unless he can make out by satisfactory evidence, that Childs, on the 4th December 1833, the date of its execution intended to take the benefit of the insolvent laws; that such was his view and expectation. at that time.

Now, the first difficulty in the way of the plaintiff, and it seems to me a formidable one, is, that Childs when he executed the deed by which the alleged preference was given, could not apply for the benefit of the insolvent laws, for want of the residence required, to bring him within their provisions.   He had then been living but a short time in Maryland, and many months must elapse, before the relief contemplated by those laws could be extended to him.   How it may be asked can it be said that he executed the deed with a view, and under an expectation of taking the benefit of laws, the provisions of which he was in no condition to enjoy, because of the indispensable pre-requisite of a two years residence which he did not possess, It is true, (though he denies it in his answer,) he may have known that special acts of insolvency were sometimes granted, and that laws were occasionally passed, dispensing with some of the conditions upon which the general system was administered ; and he may have contemplated an application to the legislature to dispense in his case, with the qualification of resi-

dence ; but this seems to me to be a strained and unnatural view of the motives which probably influenced him at the time, and one which could not safely be adopted, unless supported by positive proof, or pregnant circumstances. This moreover is not the allegation of the bill, which avers, that the deed was made by Childs, "when he knew himself to be insolvent, and contemplated applying for the benefit of the insolvent laws of Maryland." Such an averment appears to me, to be inapplicable to a party, to whom the law in its then state, did not extend.

Conceding that the evidence in this case does show, that Childs was in fact in insolvent circumstances at the date of the deed, and that he knew himself to be so, (though this is likewise denied by his answer,) there is nevertheless not wanting evidence, independently of the fact, that he was not entitled at that time to apply for the benefit of the insolvent laws, going to repel the presumption that he contemplated such an alternative.

There is not such a resemblance between the circumstances of this case and the case of *Dulaney* vs. *Hoffman,* relied upon by the counsel for the plaintiff, as would make the judgment pronounced in the one, a safe precedent to be followed in the other. The points of difference between them, if not numerous, are strong and palpable and present abundant room for a different determination. In *Dulaney* vs. *Hoffman,* there existed no impediment to an immediate application, by the parties making the obnoxious preference, for the benefit of the insolvent laws, and in point of fact their application pressed rapidly upon the heels of the transfer. In this case, at the time of the transfer complained of, the party making it was in no condition to apply at all, nor did he make his application for more than three months afterwards. In that case there was no attempt whatever to compromise with or appease the unpreferred creditors, a circumstance of so much weight, as to be more than once mentioned by the Court of Appeals in delivering their opinion. In this, there was not only an effort to adjust their other debts, but several of the creditors who were not preferred,

actually released the petitioner upon the terms specified in the deed. In that case the debts due to the favored creditors had not then matured, and were at the time of the transfer wholly unprovided for; whilst in this, the preferred parties held collaterals to a larger nominal amount than the debts due them, and might therefore be regarded as preferred, even before the execution of the deed. In that case, there was an actual transfer and delivery to one of the selected creditors, for the benefit of himself, and others similarly situated, of the entire stock in trade of the insolvents, with directions to sell the same, and to apply the money to the payment exclusively of those creditors, without any reference whatever to the rest; although they knew, that many of them must necessarily go unsatisfied. Whilst in this, though a preference is given to one class, the deed professes to provide for others, and holds out inducements to them to accede to its provisions.

These differences between these cases are, I think, sufficiently broad and distinct, to separate them by a well defined line, and to render a conclusion perfectly sound as to the one, altogether erroneous as to the other.

The preceding observations have been made without reference to the answer of Childs, and upon the hypothesis that his answer cannot be read as evidence against the complainant.

If the answer can be read, then it is manifest, that the difficulties in the way of the plaintiff are greatly increased.

The question, therefore, is, may it not be read by the defendant Baker, as evidence against the complainant?

It is the established rule in this state, that the answer of one defendant in chancery, is not evidence against the other defendants—the Court of Appeals having so expressly decided, in opposition to the cases of *Field* vs. *Holland*, 6 *Cranch*, 8, and *Osborn* vs. *The U. S. Bank*, 9 *Wheat.*, 738, in which under the circumstances of those cases, a different rule was settled. *Jones* vs. *Hardesty*, 10 *Gill & Johns.*, 464. But that is not the question here. It is not an attempt to read the answer of a defendant against his co-defendant, but the proposition is, may not one defendant read the answer of a co-defend-

7*

ant against the plaintiff, who, by his bill, called upon that defendant to respond upon oath to such questions as he thought fit to propound to him. It seems to be conceded, that there is no decision of our Court of Appeals which denies to a defendant this privilege, of reading the answer of his co-defendant against the plaintiff, the case of *Gardiner & Bowling* vs. *Hardey & Simms*, 12 *G. & J.*, 380, expressly avoiding a decision of the question ; and it is thought, that the reasoning of the court in Jones vs. Hardesty, against the admissibility of the answer of one defendant as evidence against another, so far from leading to the conclusion, that it may not be read against the plaintiff, tends rather to establish the reverse. In the case of *Crawford & Sellman* vs. *Taylor*, 6 *G. & J.*, 323, the answer of the insolvent, who was a defendant, was read, and constitutes a part of the proof relied upon by the court, as showing that the transfer in that case was not made in contemplation of taking the benefit of the insolvent laws.

The case of *Mill* vs. *Gore*, 20 *Pick. Rep.*, 28, is express, that though the answer of one defendant is not evidence against the other, it is evidence against the plaintiff. And in the case of *Field et al.* vs. *Holland et al.*, 6 *Cranch* 8, chief justice Marshall, in speaking for the court, decided, that the answer of a defendant when responsive to the bill, is evidence against the plaintiff in favor of the other defendants ; and though the Court of Appeals of this state expressed their dissent from this decision, in so far as it affirmed that the answer of one defendant might be read against others claiming through him, no dissent was expressed from the proposition, that the answer would be evidence for a co-defendant against the plaintiff. The case of *Morris* vs. *Nixon*, 1 *Howard*, 119, 126, does not seem to me to decide the question one way or the other. In the case of *Dunham* vs. *Gates et al.*, 1 *Hoffman*, 185, the assistant vice chancellor does say, that the answer of one of the defendants could not be used on behalf of the others ; but as the bill was dismissed, notwithstanding this remark, there was no necessity for a careful consideration of the question, and from the manner in which the observation was made, and the absence

of all authority in support of it, I am persuaded it was not very fully examined.

The argument of the complainant's council, in opposition to the admissibility of this answer contends, that the defendant should not have the benefit of it as evidence, because he might have examined Childs as a witness—a privilege which he insists the plaintiff had not, upon the ground, that his interest in the surplus of the estate, if any, in the hands of the trustee Glenn, disqualified him.

Now, in the case of *Hickley* vs. *The Farmers & Merchants' Bank*, 5 *G. & J.*, 377, the complainant, the trustee of an insolvent debtor did examine the insolvent upon this very question, and the decision of the Court of Appeals turned entirely upon his evidence. But, independently of authority, is there, upon principle, any weight in the objection to the insolvent as a witness for his trustee, upon a bill filed by him, to set aside such a deed as the present? The objection is, that if the plaintiff succeeds, he, the witness, will be entitled to the surplus of the estate, after his debts are paid. But is not this the precise condition of things under the impeached deed to the defendant, Baker? Does not that deed say, that after the payment of debts, the surplus, if any, shall be paid over to the grantor, his executors, administrators or assigns, and is there not, therefore, an exact equipoise, rendering it perfectly indifferent to the insolvent, in point of interest, whether the decision passes one way or the other.

This is not like the case of an action brought by the trustee of an insolvent debtor, against one of his debtors, in which the insolvent would not be a competent witness for the plaintiff without leasing his interest in the surplus, because his proof would go to swell a fund, in which he would, in a certain event, have a right to participate.

But the question here is, simply, which of two trustees shall administer the fund, the rights of the insolvent being identically the same, let the result be what it may. Under such circumstances, I think, there is such an equilibrium of interest, that the insolvent would be a competent witness for either party, and so

thinking, I am of opinion, that the complainant having thought fit to make him a defendant and examine him in that form, must be content to take his answer as evidence against him, so far as it is responsive to the allegations of the bill.

On the ground, therefore, of the insufficiency of the proof, to establish a fraudulent intent on the part of the defendant, Childs, in the execution of this deed, the Chancellor passed a decree, dismissing the bill, but without cost.

[No appeal was taken from this decree.]