# CIRCUIT COURT OF BALTIMORE CITY.

(Decided January 22, 1898).

SAMÁNNA CROCKETT, ET. AL.,
VS.
HARRY B. DAVIS, ET AL.

*S. S. Field, Samuel Regester* and *John F. Gontrum* for plaintiffs.

*D. M. Reese* and *Edgar H. Gans* for defendants.

SHARP, J.—

The bill in this case was filed in 1893. The complainants are four children of Mrs. Catherine Davis; the defendants are her other children and her administrator. The object of the bill was to compel the administrator to account for certain chattels and a debt, alleged to be due by Louis H. Fehsenfeld. It was alleged the defendants had colluded and conspired together to defraud the complainants of the chattels and debt referred to. The answers of the defendants denied the fraud, denied that there was any debt due by Fehsenfeld, and allege that with the exception of a few articles of small value, inadvertently omitted, the administrator had made a true return of the property of Mrs. Davis in his inventory.

In June, 1896, the bill was amended by the addition of a new paragraph, which is now the seventh paragraph of the bill. This paragraph, so far as it is material to the controversy, is as follows:

"7. That in August, 1890, said Catherine Davis, loaned to said Louis H. Fehsenfeld $4,500, no part of which was ever repaid to her, and said Harry B. Davis has never returned any part thereof in the estate of Catherine

Davis, deceased, of which he has been and is administrator."

Interrogatories were filed to be answered by Mr. Fehsenfeld. The object of the amendment was to compel Fehsenfeld to pay the alleged debt to the administrator, and to compel him to account for it. The defendants demurred to the additional paragraph on the ground that it made the bill multifarious, as after the amendment it contained different subject matters of suit and made Fehsenfeld a party to the case in a different capacity, he having been made a party to the original bill only as husband to one of the defendants.

The defendants also answered the bill. They admit that Catherine Davis loaned Fehsenfeld $4,500, as alleged, and state that at the time of the loan Fehsenfeld gave Mrs. Davis a note. At the maturity of this note, the defendants allege, she gave the debt to the defendant, Harry B. Davis, and directed Fehsenfeld to give him a new note, which he did, and which Fehsenfeld paid at its maturity to H. B. Davis.

At the hearing, the demurrer was withdrawn and it was argued that the issue was the gift *vel non.* A number of exceptions were filed to the evidence by the complainants. The first, second, third, fourth, fifth and thirteenth exceptions relate to the competency of Harry B. Davis and Louis H. Fehsenfeld as witnesses to testify to the alleged note and gift to Mr. Davis.

Mr. Fehsenfeld was a party to the note of August, 1890, and to the alleged novation in 1891. The object of these proceedings is to compel the payment of the note, or the sum loaned by Mrs. Davis to Fehsenfeld, to her administrator, and the note and gift are directly in issue. The alleged transaction of August, 1891, was a contract. Its effect was to discharge the debt due by Mr. Fehsenfeld to Mrs. Davis and create a new debt to H. B. Davis. This was a form of contract called in the books a novation. Fehsenfeld being a party and Mrs. Davis being dead, he is incompetent, under the Code, Article 35, Section 2. The case of Mr. Davis is somewhat different. It is conceded that the alleged transfer of the debt to him was voluntary and was in fact a gift, and it is argued this was not a contract or cause of action, and consequently Davis was

competent. I have examined carefully the cases cited.

In Graves vs. Spedden, 46 Md. 540, the leading case on this subject, the gift was in the form of a deed of a farm. One of the grantees was permitted to testify to declarations of the grantor showing the conveyance was not an advancement. It was held, declaration proven did not constitute a contract or cause of action, and the witness was therefore competent.

In Johnson and wife vs. Heald, 33 Md. 355, a donee of property was held incompetent to testify to the mental capacity of the donor, and to all that occurred in reference to the gift.

In Robertson vs. Mowell, 66 Md. 536, cited by the defendants, the Court of Appeals held, that the witness was not a party to the contract or cause of action in issue.

The only claim Davis can possibly assert to the debt arises out of the novation of August, 1891. As already stated, this was a contract. Davis was a party (none the less because he paid nothing), and being a party, he is disqualified. To hold otherwise would be to ignore entirely the provisions of the Code. These exceptions must therefore be sustained.

The sixth and seventh exceptions are sustained. Code, Art. 35, Sec. 2.

The eighth and ninth exceptions are overruled.

The tenth, eleventh and twelfth exceptions are overruled.

The fourteenth exception raises the question of the effect of the answers.

Excluding the evidence of Davis and Fehsenfeld, evidence of the gift is insufficient. Mrs. Broadus says Mrs. Davis told her she intended to give Harry a present.

Mrs. Fehsenfeld says her mother and father told her they intended to give money to Harry, and that Mrs. Davis told her soon after the caveat was withdrawn, she intended to make a present to Harry. On the other hand, Mrs. Crockett says she had a conversation with Harry shortly after Mrs. Davis' death, about the debt due by Fehsenfeld, and he said nothing about the gift. None of the witnesses refer to the particular thing she intended to give, but spoke generally only of an intended gift. There is no evidence that she ever carried her intention into effect. On the evidence, the gift is not made out.

It is argued, finally, that the answers to the interrogatories in which the gift is fully set out, are evidence for the defendants, and, under the practice in equity, unless overcome by the testimony of two witnesses, or one witness with corroborating circumstances, and there being no such evidence, defendants' contention is sustained.

It is also argued that the only evidence of Fehsenfeld's indebtedness is his answer, and the plaintiff, if he relies on the answer to charge Fehsenfeld with the debt, must read the part exonerating him. It is undoubtedly true that an answer responsive to an interrogatory, is evidence for the defendant, and that the plaintiff, if he relies on an admission in the answer, must, as a general rule, read all matters of explanation. On the other hand, if the defendant introduces into his answer matter not of explanation, but of avoidance, such matter is not within the rule. The burden is still on the defendant to prove the matter set up in avoidance.

It is argued in this case that the plaintiff, having asked Fehsenfeld in the interrogatory whether he borrowed the money and if he ever paid it, it is competent for Fehsenfeld to answer that he had borrowed the money and that he had paid it, and in an explanation of the allegation of payment relate the gift to Harry B. Davis and the payment to him, and it is maintained the statement of the gift is responsive to the interrogatory, and therefore must be overcome by the testimony of two witnesses or one witness with corroborating circumstances. It is sometimes difficult to distinguish between matters of explanation and matters in avoidance, but I think it clear on the authorities that the allegation of a gift is not matter of explanation, but matter of avoidance.

The interrogatories and answers must be construed in connection with the paragraph of the bill in support or denial of which they are filed.

Paragraph 7 of the bill alleges "That in August, 1890, Catherine Davis loaned to said Louis H. Fehsenfeld $4,500, no part of which was ever repaid to her, and said Harry B. Davis has never returned any part thereof in the estate of Catherine Davis, deceased." There is nothing said here about any gift. It is true, the concluding clause of this paragraph of the bill alleges that the complainants are advised that Fehsenfeld claims to have paid the debt, and contains other allegations, but I do not think this is a part of the plaintiffs' case. It was inserted in the bill by way of anticipation of the defense and in answer thereto. This is common in equity pleading. Under the old practice, one part of the bill, called the charging part, was always devoted to a statement of the supposed defenses and to the complainants' answer to them. Only so much of the answer as responds to the question, whether Mrs. Davis loaned Fehsenfeld the money and whether he had paid it, is admissible. He admits the debt and says he did not pay the debt to Mrs. Davis or her administrator, but to another person. If the interrogatory had been limited to the enquiry whether he borrowed the money, it would not have been responsive to say he had borrowed and paid it. Payment is matter of avoidance. The allegation of a gift to H. B. Davis and payment to him is matter of avoidance. There would be no difficulty about this were it not that the complainant did not stop at asking Fehsenfeld whether he had paid the debt, but proceeded further and answered to whom he had paid it. It may be argued with reason that the enquiry "To whom did you pay it," would authorize the defendant, in case he paid the debt to anyone else than the party originally entitled, to show the authority of such party to receive it; but I think the proper effect to give to the interrogatory is, that it calls on the defendant for legal evidence of the payment. This, of course, includes legal evidence of the novation. If Fehsenfeld had said he paid it to an agent of the original party, he would have to prove the agency.

In Ringgold vs. Ringgold, 1 H. & G. 11, the bill was filed against trustees under a deed of trust to pay debts and for other purposes. The bill asked for an account. The defendants were asked in interrogatories whether they had not received large sums of money due the grantor and whether either of the trustees were indebted to the grantor; whether they had paid any of the debt due by the grantor and state the same. The defendants filed an account claiming the payment of certain debts. The claim was allowed by the chancellor without other voucher than the answer of the defendant, but the Court of Appeals rejected these disbursements saying: "The general rule that an an-

swer responsive to a bill is evidence for the respondent is a well established and settled principle. But an answer when it asserts a right affirmatively in opposition to the plaintiff's demand is not evidence."

"An answer will not support a matter set up in avoidance or discharge when the matter of avoidance is a distinct fact. In such case the defense must be proven. A demand for an account is nothing more than a demand on the defendant to show his receipts and the legal evidence of his expenditures." "The rule then may be stated (and it is the good sense of all the cases cited in the argument), that in all cases where a complainant seeks a discovery and relief, and to make out his case applies himself to the conscience of the defendant, if in his answer the liability is once admitted there can be no escape from it but by proof." "Nor is there any hardship in the rule when ordinary care preserves the evidence of their payments, and to say that the respondents should have done it, is demanding from them nothing extraordinary or out of the usual course of human transactions. The establishment of a contrary doctrine would lead to dangerous consequences, and would be calculated to render trusts valueless by giving to trustees, executors and guardians the power on their own oaths to exempt themselves from all responsibility."

The facts relied on by defendant show the gift was not a part of the original transaction, but an entirely new and distinct transaction, to which there was a new party, and which occurred a year after the debt was incurred.

I think this point is settled by the case referred to and the following additional cases:

Gardner vs. Hardey, 12 G. & J. 381.

Hutchens vs. Hope, 12 G. & J. 175.

Fitzhugh vs. McPherson, 3 Gill. 301-412.

Robinett vs. Wilson, 8 Gill. 143.

Cecil vs. Cecil, 19 Md. 79.

Pusey vs. Wright, 7 Casey 387.

Buchanan vs. Buchanan, 72 Ala. 55.

Beckwith vs. Butler, 1 Washbn. 225.

Hart vs. Ten Eyck, 2 Johns Ch. 62.

Ison vs. Ison, 5 Rich. Eq. 15.

It is argued that the interrogatories and answers must be construed in connection with the bill, and the bill al-

leging fraud and collusion and all matter which responds to the charge of fraud is responsive to the interrogatories, and that in answer to the charge of fraud it is competent to state all the circumstances under which the act complained of was committed, and thus show it was done bona fide and honestly, and not fraudulently. I do not so understand the pleadings. The case presented arises on the amendment to the bill. This amendment was not supplemental to the charge of fraud, but set up a new and distinct claim upon which defendants were liable, independent of fraud. The interrogatories were intended to elicit discovery in connection with the new claim and had no bearing on the charge of fraud.

The complainants charge that Mrs. Davis, in August, 1890, the time of the alleged loan to Fehsenfeld, and until her death, was sick, feeble and suffering from an impairment of mind and susceptible of being easily influenced, and was subjected to undue influence on the part of said Louis H. Fehsenfeld and the other defendants. I do not think these allegations are sustained. The evidence offered in support of them is that of the plaintiffs and Mrs. Oldwine. The plaintiffs testify that while Mrs. Davis was not violent or insane, she was sick, weak in body and mind and easily influenced and at times childish. She had stomach trouble, was half crazy about the caveat to her husband's will and her memory was impaired.

On cross-examination, the facts on which the witnesses relied in support of their testimony were in general entirely inadequate to sustain them.

On the other hand, the defendants denied absolutely all these allegations, and assert on their part that Mrs. Davis was a woman of unusual force of character and determined will; that she was not seriously ill at the time of the transaction in dispute; that her mind was not impaired, and that she was in all respects as competent to attend to business as she ever had been. All had full opportunity to observe her condition and both sides are equally positive.

Under these circumstances their evidence is less important than that of the other witnesses who were disinterested. With the exception of Mrs. Oldwine, who says, after Mr. Davis'

death, Mrs. Davis, while not insane, was easily influenced for peace, all the witnesses testify that Mrs. Davis was a person of unusual force of character, was of sound mind and entirely herself at the time of the alleged transactions. Mrs. Broadus saw her frequently for eight or nine years before her death, made long visits, sometimes of weeks' duration. She says during all this time, "her intellect was perfect." She saw her shortly before her death; "her mind was as good as usual, but she was very sick." Mr. Schoenlein, a carpenter, who had several transactions with her in 1891 and 1892, relating to her property, says she had an intelligent idea of what she wanted done and was close on a bargain. Her mind "was all right."

A. A. White knew her since 1878; visited her frequently for years, remembers to have seen her in August, 1891, and saw her five or six weeks before she died; says he saw no impairment of her mind, and that she was always a woman of uncommon will power and possessed of great common sense.

Mrs. McEldowney knew her for fourteen or fifteen years and saw' her frequently, sometimes two or three times a week; her last visit was in October or November before she died. She says Mrs. Davis was a person of very strong will, and that there was no impairment of her mind.

Mrs. Davis' sister, Miss McCormick, says there was no change in Mrs. Davis' mental condition to the time of her death.

Mr. Reese saw her frequently during the litigation over the caveat to her husband's will and during the settlement of Mr. Powell's estate. He says she was clear headed and full of fight. He saw her in July and August, 1891. She was then keen and clear headed, bright in regard to her affairs and of considerable will power.

Louis Fehsenfeld had business dealings with her and saw her socially very frequently. He saw her in August, 1891, and saw no change in her mental condition.

Dr. Wilson attended her in November, 1891. She paid him at least ten visits. He saw nothing wrong with her mind and believed she was competent to make a valid will or contract.

She attended to household affairs and to her business, drove about the city in her carriage, sometimes driving the carraige herself, until a short time before her death.

It is very clear on the testimony that the allegations that Mrs. Davis was mentally deficient is not sustained.

Nor do I think the allegation that she was unduly influenced by Fehsenfeld is sustained. That the relations between them were affectionate and intimate is conceded, but it does not appear that he exerted any influence whatever in respect to the alleged gift or even advised her in the matter.

It is argued that the verdict of the jury on the issues from the Orphans' Court is conclusive on this point. The finding of the jury was that she was not of sound and disposing mind on August 13th, 1890, and had no relation to her condition in August, 1891, which may or may not have been the same. It is also argued that her condition being found to be such in August, 1890, it is presumed to continue. If this is the rule, I think the evidence in this case sufficient to overcome this presumption.

In the view I take of the case, the questions of mental capacity and undue influence are not important; but as a good deal was said on this subject in the argument, it is proper to refer to these charges, and to say that they are not supported by the evidence. I may add, that there is no evidence supporting any charge of misconduct on the part of Fehsenfeld nor H. B. Davis. They are in the position of having neglected to preserve legal evidence of an important transaction, and must take the consequences.