## HUGH McNEAL and JOSEPH D. WORLEY, vs. JOHN GLENN, Trustee of ANN WATSON.

A mother conveyed to her son by deed, for the expressed consideration of $404, property which she had recently purchased for that sum, but which she had repaired at an expense of more than $800. This deed being impeached by the creditors of the grantor, the grantee, to avoid the inference of fraud arising from the inequality between the value of the property and the consideration in the deed, set up in his answer an indebtedness from his mother on account of services as her clerk. This part of the answer not being responsive, and the proof showing that it was not probable or even possible that the grantee could, with his means of raising money, have saved sufficient to pay the $404, and also to create a fair indebtedness from his mother for the $800; and there being other suspicious circumstances in the case, it was HELD, that the deed was fraudulent and void as against the creditors of the mother.

The bill alleged that repairs to the amount of $900 were put on the property by the mother after the conveyance to her son, but did not ask him to show in what way he compensated her for the same. The answer denies that the repairs were made subsequent to the deed, and then states that the repairs were paid for by an indebtedness of his mother to him as her clerk. HELD, that this statement of the answer was not responsive, and must be sustained by proof.

Under a bill to account, the answer is no evidence of disbursements; such a bill is no more than a demand upon the defendant to show his receipts and the legal proof of his expenditures.

APPEAL from the Court of Chancery.

The object of this suit was to set aside as fraudulent three deeds, executed by Ann Watson prior to her application for the benefit of the insolvent laws. The first was made to her son, Hugh McNeal, on the 11th of July 1843, and conveyed to him certain leasehold property, on Pratt street, in Baltimore, for an ostensible consideration of $404. The second was a bill of sale to the same party, executed on the 22nd of August 1843, conveying to him for an ostensible consideration of $8750, all the grantor's stock of goods in her two stores in Baltimore, with certain articles of household and kitchen furniture. The third was a mortgage, executed on the 20th of March 1845, to Joseph D. Worley, to secure him from his liability on certain promissory notes to one Watts and Flint,

Cook & Co., in which he had joined her, the debts for which the notes were given being due by Ann Watson in her indi-: vidual capacity, and as administratrix of her deceased husband, Donald Watson. The property mortgaged was the interest of Ann Watson in the estate of her said husband, and consisted chiefly of her interest in certain leasehold property in said city, and the mortgage was acknowledged before a single justice of the peace. On the 22nd of March 1845, she applied for the benefit of the insolvent laws, and in May following, John Glenn was appointed her permanent trustee, who, on the 30th of July following, filed the original bill in this case, attacking the above mentioned deeds as fraudulent as against the creditors of the grantor.

This bill alleges, that Mrs. Watson being largely indebted and hopelessly insolvent, executed the first deed to her son for the ostensible consideration ($404,) appearing on its face, and that she afterwards put repairs on the house to an amount exceeding $900; continuing still insolvent, she made the second conveyance to the same party, covering all her stock in trade and furniture. McNeal, it is alleged, was young, without means, barely supporting himself by his trade as an iron worker, and could not and did not pay the pretended consideration money for either conveyance. Both deeds, therefore, it is alleged, were fraudulently executed to hinder and defraud creditors, and to conceal and secure the property for Mrs. Watson's own use, McNeal accordingly permitting her to remain in the house, and keep, use and dispose of the goods and furniture as before the conveyance. The bill further alleges, that Mrs. Watson continuing insolvent and maintaining herself by the alleged frauds, executed the deed to Worley in consummation of them; that the notes on which Worley became her surety were partly given by her as administratrix, for debts she was not bound to pay, and the whole was a contrivance to enable her to keep possession of the property she had not already fraudulently disposed of; that Worley, at the time of the mortgage, was in possession of the house conveyed by the first deed to McNeal, and it

McNeal and Worley, vs. Glenn.

was agreed between the parties that he should indemnify himself out of the rents, which he did, whereby the notes were satisfied without loss to him. This mortgage, therefore, it is alleged, was executed in fraudulent hindrance and delay of creditors, and to secure the property for the benefit of the grantor, and to give an undue and improper preference in contemplation of insolvency, and was moreover defectively executed. The bill then calls upon McNeal and Worley to answer all the matters hereinbefore set forth; and upon the former to state whether he paid to Mrs. Watson the sums of $404 and $8750, recited in the deeds as the consideration money for the same, or either of said sums, or any part of either of them; and also when and where the said money was paid, in whose presence, whether in specie or notes, and what was and had theretofore been his occupation and means of obtaining money; and for an account of the goods and furniture conveyed by him, and of all money received on account of the rent of the house and sale of the goods, and of the amount of the repairs put upon the house by Mrs. Watson after the conveyance thereof to him, &c.; and then prays for a decree vacating said deeds and for general relief.

By an amended bill the additional allegations are made, that all three of the deeds were executed in contemplation of insolvency, with intent to prefer both grantees, when Mrs. Watson had no reasonable expectation of exemption from liability, &c., for her debts, without applying for the benefit of the insolvent laws, McNeal and Worley both having at the times of their respective deeds, notice of her condition. The allegations of this amended bill are according to the provisions of the act of 1834, ch. 293, sec. 1, and also to the general provisions of the older acts.

The answers expressly deny the formal and technical allegations of the bill, and put the complainant to the proof of them. McNeal on his part avers, that he paid the consideration money ($404,) mentioned in the first deed. He denies that repairs were put on the house by his mother after she conveyed to him; but admits that before the conveyance she

had put about $900 of repairs on it, and that as a considera-
tion for this, it was understood that he should surrender his
claim on his mother for some $800 she owed him as clerk
hire for about two years, during which he had served her.
That at the date of this conveyance he was a millwright, but
denies that he was then without means, and avers that he
paid the $404 out of his own money to his mother when he
received the deed, part in specie and part in bank notes, in
the presence of Patrick Collins, who was the only one present
besides his mother on the occasion; that he obtained this
money by his labor, being his savings from earnings as a
millwright and machinist, his business then and now. As to
the second deed, he says the consideration stated in it was
inserted by the draftsman without his own knowledge; that
the property conveyed was worth about $3500, and that he
did not pay the consideration expressed therein, because the
deed, though absolute on its face, was only meant to secure
to him the sum of $2000, which his mother owed him as
administratrix of his father's estate. He admits that his
mother was largely indebted when she conveyed to him in
both cases; but denies that in his judgment or her own de-
clared opinion she was hopelessly insolvent. He admits that
after the goods were conveyed to him he allowed his mother
to sell them, meaning by such sales to realise his claim, but
she becoming embarrassed and obliged to obtain indulgence
from her creditors, or come to terms with them, settled various
claims with said goods until the quantity was much reduced,
and those that were left were sold under execution by some
of her creditors. He denies that he allowed his mother to
occupy the house, rent free, but admits that he permitted her
to retain possession of the furniture, which he avers was old
and not worth more than $100, and was part of the estate of
Donald Watson, the deceased husband of his mother.

Worley admits the execution of the deed to him, but says
that it was fairly and *bona fide* made; that he became security
on the notes therein mentioned, only on condition that he
should be thus indemnified, and that he had paid these notes

without having been repaid any part of the amount. He also denies all fraud, &c.

A large mass of testimony was then taken, the purport of which sufficiently appears from the arguments of counsel, the opinion of this court and that of the chancellor, reported in 3 *Md. Ch. Decisions*, 349, delivered upon the passage of the decree vacating all the deeds, from which this appeal was taken by the defendants. The complainant excepted to the competency of Mrs. Watson as a witness, and to the admissibility of all the evidence going to vary the consideration or alter the character of both the deeds to McNeal. The mortgage to Worley was objected to because, being a conveyance of a chattel real, it is executed before only one justice of the peace, and also, because the amounts of the alleged notes to Watts, to secure which it was given, are left in blank.

The cause was argued before LE GRAND, C. J., ECCLESTON and TUCK, J.

*Charles F. Mayer* for the appellants.

1st. The *bona fides* of the deeds to McNeal is established not only by the answer, but by testimony that is *super-added;* and all imputations, (the only one to be *imagined* being inadequacy of consideration, no proof on that score, however, being offered,) are overruled by testimony; which testimony, not contradicting the deed, but explaining *why the consideration of the deed should be deemed valid in amount,* is perfectly competent to overthrow testimony, or charges *equally dehors* the deed. 7 *G. & J.*, 331. 9 *G. & J.*, 91. 10 *G. & J.*, 248. 1 *Gill*, 423. 5 *Ves., Jr.*, 700, Conolly vs. Lord Howe. *Phill. Ev.*, 531, 533. 17 *Ves.*, 192, Hartopp vs. Hartopp. 1 *Younge and Collyer*, 138. 1 *Simon*, 166. 7 *Ves.*, 211. 9 *Gill*, 32, *Bevin vs. Shepherd.*

2nd. All pretensions of *undueness of preference,* are met by the responses of the answers of Worley and McNeal. And Worley's deed cannot be regarded as at all a preference conveyance, it being executed but in fulfilment of the terms upon

McNeal and Worley, vs. Glenn.

which conditionally the liabilities provided for were incurred. As concerns fraud in Worley, either in taking or in maintaining that conveyance, there is not the slightest testimony.

3rd. The deed to Worley will, under the authority of *Alexander and Ghieslin*, (5 *Gill*, 138,) be enforced as a contract for a security, if, for want of acknowledgment before two justices, the instrument be not deemed legally formal as a deed. The amount of the Watts' notes is rendered certain and duly specific, (within the act of 1825, ch. 50,) by referring to the judgments of Watts: "*certum est quod certum reddi potest.*" At least the security must operate for the Flint, Cooke & Co., notes.

4th. Mrs. Watson's testimony is competent, and certainly is not, for the reason alleged by the appellee, inadmissible, since, by his own showing, she did not obtain her final release under the insolvent application.   She stands, therefore, liable to all her creditors equally as to Worley, and diminishing the fund here of her general creditors, she increases her liability in that quarter, so far as she promotes Worley's satisfaction from this property.   No such objection by appellee was taken in chancery to Mrs. Watson as a witness.   His objection there was to only certain parts of her testimony, and upon no personal ground.   At all events, however, she is swearing to what makes her answerable to Worley, so far as her testimony establishes payments by him after her application, and so, in any way, she is involved as much as she can be benefitted by her testimony.

5th. The proceedings before the insolvency commissioners, as showing Mrs. Watson's condemnation for fraud against her creditors, are, in that respect, no evidence against us.   Their judgment would not so operate, if even the proceedings showed their determination to be founded upon the *mala fides* of these deeds.   But it does not even appear on what charges, or upon what testimony or development, she was found unworthy of the benefit of the insolvent laws.

6th. We have already anticipated the fifth objection of the appellee, as to the testimony of Mrs. Watson's indebtedness

to McNeal for his portion of his father's estate. It could not, as insisted by the appellee, be proved by administration accounts, since there never was an administration, as is testified.

7th. Whatever Mrs. Watson's expectation might have been, that by giving to her son McNeal the deed of her stock in trade, to secure his claim, she would, by indulging her with selling it, be enabled, in fact, to pay with the proceeds all her creditors, (as to a certain extent she by such means proceeded to do,) yet, *and that is candidly the amount of all she has testified upon that head,* such a reserved view of her's, not shown to be imparted to McNeal, and by him concurred in, could not bear against McNeal's security; indeed, so far as her ultimate, though secret action, was to ensure equal payment to all her creditors, this deed became the *more meritorious* in the view of equity. Mrs. Watson honestly swore to the credits claimed for payment of the debt to Cooke, Flint & Co., although the payments were made actually by Worley, because the oath demands only that the sums have been paid, or *"have been secured to be paid."* A creditor taking the assumption proper of the administrator, releases the estate, and the administrator then takes credit for the claim against the estate. This is usual and is legally right. 4 *Mason*, 206, *Halsey vs. Whitney.*

*Frank Key Howard* and *S. T. Wallis* for the appellee.

1st. The whole of the three deeds were fraudulent in fact, and constituted a contrivance, in which Worley and McNeal participated, to cheat the creditors of Mrs. Watson, and secure her property for her benefit. Now what was the condition of Mrs. Watson at the time of the deeds to McNeal? The latter admits that she was largely indebted, though he denies that she was utterly insolvent. The evidence shows that she was pressed by numerous creditors, and was sued by Wilkins and Wonn, as early as the 30th of August 1843, for an undisputed debt, which they had previously, for three or four months, been pressing her for. Mrs. Watson confesses that she conveyed the goods to her son to keep them from being swept away by her creditors, and that she and her family lived on

the proceeds of the goods and the rent of the house. The unfavorable report of the insolvent commissioners was also evidence to prove her fraud in the transactions impeached. She caused repairs, to the amount of $815.84, to be put upon the house before she conveyed it to McNeal. She paid the carpenter $130 in money, and the balance in goods out of her store, which she continued to let him have until the summer of 1844, a year after she had pretended to convey these very goods to McNeal. The evidence shows that McNeal never could have earned the money, ($404,) which he alleges to have paid as a consideration for the house. He is shown to have been incapable as a clerk, and to have been at work at his trade when he alleges he was earning clerk-hire for his mother. How could he have earned it? Mrs. Watson proves that he lived with her till he went to Watchman as an apprentice, at about the age of eighteen years. Watchman says he worked there after his apprenticeship, and *left in 1841.* As an apprentice he received $3 per week, and for one year at the rate of $1.25 per day. From 1841 to 1843, was therefore the only time he could have earned the $404, and out of this time, two years, Mrs. W. says he was acting as her clerk, incurring an indebtedness from her for which the $800 repairs were to pay, and besides this he had a wife and family to support. As for the deed of the goods he never pretended to have paid the consideration expressed in it. He alleges that there was a mistake made by the draftsman, and that his mother had been indebted to him for $2000 for more than twenty years. The setting up of this $2000 is an affirmative allegation, not responsive. How is it proved? The allegation in his answer is, that his mother was the administratrix of his father, yet she says in her evidence that no administration was ever taken out. He stood by and saw these very goods taken under execution for his mother's debts. The whole transaction is tainted with fraud throughout.

2nd. All three of the deeds are, at least, fraudulent under the insolvent laws, being intended to give fraudulent and illegal preferences. *Acts of* 1816, *ch.* 221, *sec.* 6, and 1834,

*ch.* 293, *sec.* 1. 7 *G. & J.,* 170, *Dulaney vs. Hoffman.* In reference to the deed to Worley it is admitted, that Mrs. Watson was insolvent, and knew herself to be so when she executed it, which was only two days before her application. That Worley also knew it, is proven by the fact that he had been living in the house with her for nearly two years, and that as far back as September 4th, 1844, he had become surety for her to the sheriff for the forthcoming of her goods, taken under an execution by Wilkins and Wonn. He was likewise security for her personal appearance on her insolvent application, and her provisional trustee. Besides, Mrs. Watson states that she executed the deed to Worley "at the time she was going to petition, in order to get him to sign the notes." McNeal was also joint surety with Worley on the notes referred to, and as clerk to his mother he must have known her situation. Various judgments in the record show that she was, at the date of the first deed, indebted to various persons for debts long due, and the proof is that the creditors were then pressing her for payment.

3rd. The two deeds to McNeal were void under the statute of 13*th Elizabeth, ch.* 5. 1 *Story's Eq.,* sec. 369. *Twyne's case,* 1 *Smith's Leading Cases,* 2, 4. The argument on the first point is also applicable to this.

4th. The deeds to McNeal being impeached for fraud, must stand or fall upon the considerations alleged in them, no evidence inconsistent therewith being admissible. The defence set up by the answers, and attempted to be sustained by the evidence, wherein a different character and different considerations are sought to be given to them, is altogether at variance with the settled law of this State, and cannot be maintained. 1 *H. & G.,* 203, *Betts vs. The Union Bank.* 9 *G. & J.,* 91, *Clagett vs. Hall.* 10 *G. & J.,* 248, *Alcock vs. Harris.* 1 *Gill,* 423, *Cole vs. Albers and Runge.* 2 *Gill,* 393, *Henderson vs. Mayhew.* 6 *H. & J.,* 279, *Hurn vs. Soper.* The bill does not ask what was the consideration of the deeds, but asks whether he paid the sums of $404 and $8750, stated in the deeds as their consideration. He sets up in his answer an entirely

new consideration, in the shape of the $800 clerk-hire. This is not responsive, and therefore must be proved.

5th. Parol evidence was inadmissible to show any indebtedness of Mrs. Watson to McNeal, as administratrix of his father, her character as administrator, and her responsibility as such, being properly the subject of documentary evidence. 5 *H. & J.*, 372, 382, *Jones vs. Slubey.*

6th. The mortgage to Worley is inoperative from its defective acknowledgment, and invalid also as to the notes, the amounts of which are left in blank. *Acts of* 1766, *ch.* 14, *sec.* 2, and 1825, *ch.* 150. 1 *Gill*, 424, *Cole vs. Albers and Runge.*

7th. Mrs. Watson was an incompetent witness for Worley, inasmuch as if it be true as she testifies, that Worley paid the notes after her insolvent application, she and her husband are responsible to him, and the result of her testimony is to relieve them both, by satisfying Worley's claim out of another fund. 2 *Gill,* 173, *Wharton vs. Callan.*

ECCLESTON, J., delivered the opinion of this court.

This proceeding was designed to vacate three deeds or conveyances executed by Ann Watson. The first two to her son Hugh McNeal, and the third to Worley. They are alleged to be void under the insolvent laws, and fraudulent and void under the statute of Elizabeth, and at common law.

The first deed dated the 11th of July 1843, was designed to convey a leasehold interest in a house and lot on Pratt street in the city of Baltimore, for the consideration of $404. On the 12th of the preceding month this property was conveyed to Mrs. Watson for the same consideration. After her purchase and before the deed to her son, she repaired the property at an expense of $815.84. According to this statement, which is warranted by the answers and the proof in the cause, the property was worth over $1200.

To avoid the inference of fraud arising from the great inequality between the value of the property and the consideration expressed in the deed, the answer states an indebtedness

from the mother to the son, on account of services rendered by him as her clerk; which by agreement between them was to be considered as payment for the repairs.

The answer on this point is not responsive to the bill, and, therefore, must be sustained by proof. The bill alleges that repairs to the amount of $900 were put upon the property, by Mrs. Watson after the conveyance to her son. It does not ask him to state how or in what manner he compensated her for the same, nor is there any interrogatory which looks to such an inquiry. The answer denies that the repairs were made subsequent to the deed, but asserts they were before. And then the statement is given in regard to the payment made by him, in the manner already stated. In the case of *Ringgold vs. Ringgold*, 1 *H. & J.*, 82, it was held that under a bill to account, the answer is no evidence of disbursements. That such a bill is no more than a demand upon the defendant to show his receipts, and the legal proof of his expenditures.

The circumstances disclosed by the proof in this case convince us it is not within the scope of rational probability, but on the contrary next to an impossibility, that with his means of raising money or of acquiring property, the son of Mrs. Watson could have saved from his earnings sufficient to enable him to pay the $404 mentioned in the deed; and also to create a fair indebtedness to him from his mother amounting to eight hundred dollars. These repairs which it is alleged were paid for as between the mother and son, by the account for his services as clerk, were paid by Mrs. Watson to the carpenter at different times; some of the payments as late as the summer of 1844. And with the exception of $130 in money, the balance was paid in goods out of the store. Now, on the 22nd of August 1843, this lady conveyed to her son her whole stock of store goods, and all her household and kitchen furniture. It is then evident that the goods which belonged to the son were, to a considerable extent, applied by the mother toward the payment of the repairs for which she had received satisfaction and payment through his account for clerk hire. This circumstance is calculated to create a very strong suspicion

against the integrity of the alleged mode of paying Mrs. Watson by her son for the repairs.

The execution of the second deed also has an important bearing upon the one now under consideration, as tending to show the design of the parties to defraud creditors, by transferring so large a portion of the mother's property to her son ; especially when it is seen that after the conveyances the mother continued to exercise control over, and dispose of the property, in the same manner as she did previously. In view of the pleadings and proof in the cause, we are of the opinion that this first deed as against creditors, is void, under the statute of Elizabeth, believing that Mrs. Watson was at that time really insolvent, without credit, and pressed by those having claims against her. This is our conclusion whether it be admitted or not that Mrs. Watson is a competent witness for McNeal ; and also whether it be assumed or not that he had the right to offer proof in support of the allegation in regard to his having paid for the repairs by means of his account for services as clerk.

In reference to the second and third deeds we concur with the chancellor in his views and conclusions ; and having already said the first deed is void, a decree will be signed affirming the decree of the chancellor, with costs to the appellee, and remanding the cause for further proceedings in accordance with the terms of that decree.

*Decree affirmed and cause remanded.*