# HARRY B. DAVIS et al. *vs.* SAMANNA CROCKETT et al.

*Pleading in Equity— When Answer is Evidence for Defendant—Answer responsive to Interrogatories in Bill —Matters set up by Way of Avoidance—Proof of Allegations in Bill.*

Code, Art. 16, sec. 146, provides that it shall not be necessary for the defendant in an equity cause to make oath to his answer unless required by the plaintiff, nor shall any answer, whether sworn to or not, be evidence against the plaintiff at the hearing, unless read as evidence against the defendant. Code, Art. 16, sec. 147, provides that if the plaintiff shall only require an answer under oath to specified interrogatories, the answer of the defendant though under oath, except such part as shall be directly responsive to such interrogatories, shall not be evidence in his favor unless the cause be set down for hearing on bill and answer only. *Held*, that under these provisions when an answer is required by the bill to be under oath it will only be evidence against the plaintiff if read by him at the hearing, and that when not required to be under oath, it will, if under oath, be evidence for the defendant when the case is heard on bill and answer alone. But whether the answer be treated as evidence or not, it will, when denying the allegations of the bill, force the plaintiff to prove those allegations.

Under Code, Art. 16, sec. 147, the answer of the defendant under oath to the interrogatories propounded by the bill, when responsive thereto, is evidence in defendant's favor.

Matters set up in the answer by way of avoidance of a liability once admitted are not responsive and must be proved; but the mere fact that the averments of an answer are affirmative and not strictly negative in their character, does not determine the question whether they are averments of new matter in defence by way of avoidance, or strictly responsive averments.

A bill by some of the distributees of an estate against the administrator and F. alleged that the administrator had omitted from the inventories returned by him a debt due by F. to the decedent and that the administrator and F. had conspired together to defraud plaintiffs of said debt. An answer was required to be made under oath and the defendants did so answer, denying that F. was indebted to the decedent. There was no evidence in the case to support the averments of the bill or to overthrow the denials of the answer, but testimony was taken and the case was not heard on bill and answer. *Held,* that the answers were sufficient to cast upon the plaintiffs the burden of proof, and as no proof was offered, the plaintiffs were not entitled to relief under the bill.

An amendment of the said bill charged that the decedent in 1890 loaned to F. the sum of $4,500, no part of which was repaid to her, and that the administrator had never returned the same in his inventory. F. was required to answer special interrogatories asking how much he had borrowed from decedent, and how much, when, and how any part of such sum had been repaid. Defendants answered, stating that F. had borrowed $4,500 from decedent in 1890, giving a note therefor; that when said note was due decedent requested F. to execute a new note for said amount to her son, to whom she gave the debt; that this was done and F. received the original note, and that F. had since paid the new note to the decedent's son. *Held,* that the answers, while admitting that the loan had been made, set forth in the same connection, facts showing in law a payment thereof, although not expressly designated as such; that the answers are responsive to the averments of the bill, and not new matters of avoidance; that a part of the answers having been read by the plaintiff at the hearing, the whole were admissible and there being no countervailing proof, the bill should be dismissed.

Upon a general bill to account, the answer is no evidence of disbursements, because such a bill is a demand upon the defendant to show his vouchers.

Appeal from a decree of the Circuit Court of Baltimore City (SHARP, J.).

The cause was argued before McSherry, C. J., Bryan, Fowler, Briscoe, Page, Boyd and Pearce, JJ.

*Edgar H. Gans* (with whom was *B. H. Haman* on the brief), for the appellants.

*S. S. Field* and *John F. Gontrum* (with whom was *Samuel Regester* on the brief), for the appellees.

McSherry, C. J., delivered the opinion of the Court.

Four of the children of Catharine Davis, deceased, filed a bill in the Circuit Court of Baltimore City against Harry B. Davis, a son, Estella Fehsenfeld and Marion Davis, daughters, and Louis Fehsenfeld, a son-in-law, of the decedent. Harry B. Davis was made defendant individually and as administrator *pendente lite* of his mother's estate. Laying aside all the matters which have been, in fact, eliminated from the controversy, the material averments of the bill, which we now have to deal with, and which were the only ones considered and passed on by the Court below, are these: That the inventories returned by Harry B. Davis as administrator *pendente lite* of Catharine Davis were not full and perfect by reason of the omission therefrom of " *a large sum of money due from the said Louis Fehsenfeld,*" and that, " said Harry B. Davis, administrator as aforesaid, has conspired and colluded with said other defendants, for the purpose of further defrauding your complainants . . . and they further charge that said administrator has colluded with said Louis Fehsenfeld for the same fraudulent purpose *in not returning said debt due by said Fehsenfeld to said estate;* and that said administrator *has refused to return . . . said debt in consequence of said fraud and collusion.*" Each of the defendants was required to answer the bill under oath, and Harry B. Davis was further required to answer under oath certain interrogatories appended to the bill. The interrogatories so propounded to him were as follows, in so far as they relate to the present contention: " 1. Why have

you not returned in the inventory to the Orphans' Court the debt of $3,500, or thereabouts, due from Louis Fehsenfeld to Catharine Davis at the time of her death? 2. Were there no other debts due to said Catharine Davis? and if there were, name them." All the defendants answered the bill under oath, and each one in replying to the averments and charges above set forth, emphatically denied "that there was a large sum of money due from said Louis Fehsenfeld to the said Catharine Davis at the time of her death," and each further denied that Fehsenfeld "was indebted in anywise to her at the time of her death." In response to the specified interrogatories propounded to him Harry B. Davis made the following answers under oath: That he omitted to return in the inventory a debt due to Catharine Davis from Louis Fehsenfeld " *because there was no such debt due from Louis Fehsenfeld to Catharine Davis at the time of her death,*" and that he knew " of no other debts due to Catharine Davis " than those returned by him. Subsequently the bill of complaint was amended by the addition of the following paragraph: " That in August, 1890, said Catharine Davis loaned to said Louis H. Fehsenfeld $4,500, no part of which has ever been repaid to her, and said Harry B. Davis has never returned any part thereof in the estate of Catharine Davis, deceased, of which he has been and is administrator *p. l.* although your orators are advised that said Fehsenfeld claims to have repaid all of said sum, with interest, to said Harry B. Davis since the death of said Catharine Davis." Two specified interrogatories were appended, to be answered by Fehsenfeld under oath. They are in these words: " How much money did you borrow from Mrs. Catharine Davis between April 24, 1890, and February 9, 1892; upon what dates and in what separate amounts were such loans obtained? (2) How much of said money have you repaid; upon what date, and in what amount, and to whom was each of such payments made? " Each of the defendants answered the additional or amended paragraph of the bill as follows:

" That he admits that in August, 1890, said Catharine

Davis loaned to him $4,500, as alleged in said additional paragraph, and states that at the time of said loan he gave to said Catharine Davis a note for said money, payable to her order 12 months after date; and he admits that no part of said $4,500 was ever repaid to said Catharine Davis, and that said Harry B. Davis, as administrator *pendente lite* never returned any part thereof in the estate of Catharine Davis. But he denies that said $4,500 should be or should have been returned as part of the estate of said Catharine Davis, to the Orphans' Court of Baltimore City, because said Catharine Davis in her lifetime gave said $4,500 to Harry B. Davis as a gift, at about the time when said note above referred to became due and payable, and at the same time requested him (said Louis H. Fehsenfeld) to execute another note for the same, payable to the order of H. Bryant Davis (being said Harry B. Davis), which he accordingly did, and that therefore said sum of money was not a part of the estate of said Catharine Davis, at the time of her death. He admits and alleges that he has repaid said loan to said H. Bryant Davis, personally and individually as the owner of the same, with interest, since the death of said Catharine Davis, but he denies that said loan of $4,500, or any part thereof, was ever paid to said H. Bryant Davis as administrator *pendente lite* of Catharine Davis deceased."

Louis Fehsenfeld thus replied to the specified interrogatories: " I borrowed the sum of $500 and $4,500 from her about August 15th, 1890." " I gave said Catharine Davis a note for the said $4,500, payable to her order twelve months after date, with interest at five per cent., and at about the maturity of this note she gave this claim to her son, H. Bryant Davis (being Harry B. Davis), and she desiring said loan to be continued, requested me to give a new note, and to make it payable to the order of H. Bryant Davis, which I did. Said last note being payable one year after date from August 15th, 1891, I paid the principal of this note in eleven payments." He then sets them forth and continues: " All of the above payments were made to H. Bryant

Davis the owner of said note. The note of $500 I paid to. Catharine Davis December 15th, 1890." A general replication was put in and considerable testimony was taken by both sides; but not a particle of evidence was adduced by the plaintiffs to support the averments of the bill or the amended bill as to the alleged indebtedness claimed to be due by Louis Fehsenfeld to Catharine Davis or as to the averments that said debt was still an asset of the decedent's estate. These, the vital branches of the controversy stand, so far as the plaintiffs are concerned, solely upon the bill, the amended bill, the original answers, the answers to the additional paragraph and the responses to the specified interrogatories. The learned judge of the Circuit Court decreed that Louis Fehsenfeld pay to Harry B. Davis, administrator, the sum of forty-five hundred dollars with interest; and that Harry B. Davis account for that sum to the Orphans' Court. From this decree Fehsenfeld and Davis have appealed.

The question thus presented, and the one decided by the lower Court, will be considered on the face of the pleadings without reference to the evidence contained in the record, unless the conclusion reached from a discussion of the pleadings shall make it necessary to refer to the testimony.

The bill is not one seeking a general accounting from an executor, a trustee or other fiduciary, but its *gravamen* is that a specially designated debt is due by a particular individual to a decedent's estate, and that the administrator *pendente lite* fraudulently confederating with the other defendants to injure the plaintiffs who are alleged distributees of the decedent—purposely omitted to include that debt in the inventory of assets. This is what the bill as originally framed specifically charges and these charges all the defendants were required to answer under oath. In addition to this the administrator was required to answer under oath *why* he had not returned in the inventory this debt thus asserted to be due by Fehsenfeld to the estate of Catharine Davis. As we have seen all the answers to the original bill

emphatically deny that Fehsenfeld was indebted to Catharine Davis; and the response of the administrator to the specified interrogatories states that he made no return of the alleged debt because no such debt was due to Mrs. Davis at the time of her decease. No proof having been offered by the plaintiffs to sustain these averments of the bill, or to overthrow these denials of the answers, or to controvert the responses to the interrogatories; what effect should have been given upon the final hearing to the answers of the defendants and to the replies to the interrogatories? We lay aside for the moment the amendment to the bill and the answers thereto, and for the sake of clearness we will treat the question as though no amendment had been made.

There would be no difficulty about this question were it not for the provisions of recent legislation which, in this instance as in many others, in an attempt to simplify judicial proceedings, have introduced uncertainty and confusion where no pretext for either existed before. As the doctrine of the Courts of Equity stood from an early period and until within the past half century, the responsive averments of an answer under oath were taken as true, unless discredited by the testimony of two witnesses, or by that of one witness confirmed by corroborating circumstances. *Miller's Eq.*, sec. 160, and cases in note 1. The reason of the rule was stated to be that the plaintiff by calling on the defendant to answer under oath the allegations of the bill made the answer evidence, and as one witness would only be equivalent to the answer, the plaintiff in order to prevail must have preponderating proof. *Pennington* v. *Gittings, 2 G. & J. 208.* Or, as differently put, that the plaintiff by calling on the defendant to answer under oath has in effect that far made the defendant a witness and cannot be heard to say that no dependence ought to be placed on the answer he has given. *Bellows* v. *Stone,* 18 N. Hamp. 470. This rule, simple in itself and easily applied, was first invaded and qualified by the Act of 1852, Ch. 133; and ultimately it was materially altered by sec. 103 of Art. 16 of the Code of 1860. By

the section just referred to, it was provided: " It shall
not be necessary for any defendant to make oath to his
answer unless required by the complainant, nor shall
any answer, whether sworn to or not, be evidence against
the complainant at the hearing of the cause, unless the
complainant shall read such answer as evidence against
the defendant making the same . . . . ." The Con-
stitution of 1867 empowered the Judges of the Court of
Appeals to adopt equity rules which should have the
force of law.    Under the authority thus given Rule 27
was adopted in 1883.    It reads as follows: " If the
plaintiff in his bill shall not require an answer under oath
or shall only require an answer under oath with re-
gard. to certain specified interrogatories, the answer
of the defendant, though under oath, except such
part thereof as shall be directly responsive to such inter-
rogatories, shall not be evidence in his favor, unless the
cause be set down for hearing on bill and answer only
. . ."    By the Code of 1888, sec. 103 of Art. 16 of the
Code of 1860, and Rule 27 were both re-enacted, side
by side—the one as section 146, the other as section 147
of Article 16—and the question now is how these two
sections, having these different origins, are to be con-
strued so as to be in harmony.    Rule 27, or sec. 147,
evidently contemplates two conditions: First. If the
plaintiff shall *not* require an answer under oath, the
answer though under oath, shall not be evidence for
the defendant, unless the case be submitted on bill and
answer only; and, secondly, though an answer under
oath be not required, yet, if specified interrogatories
shall be filed which are required to be replied to under
oath, the replies to these interrogatories shall be evi-
dence for the defendant if they are directly responsive.
By sec. 146 the defendant need not make oath to his
answer unless required by the plaintiff; and thus the
ancient rule of chancery practice was abrogated; but
even when the answer is sworn to, it shall not be evi-
dence against the plaintiff unless read by him at the
hearing.    By sec. 147, though the plaintiff does *not*
require an answer under oath, yet the answer, if under

oath, will not be evidence for the defendant, unless the case be set down on bill and answer only. If, then, sec. 146 be read as applying only when an answer under oath is required, and sec. 147 as applying only when an answer under oath is not required, something like harmony in their provisions will be obtained. The result of such a reading would be this: Whereas formerly the answer when responsive was always evidence because always under oath; now, under sec. 146, when required by the bill to be under oath, it will only be evidence against the plaintiff if read by him at the hearing, whilst under sec. 147, though not required to be under oath, it will, if under oath, be evidence for the defendant when the case is heard on bill and answer alone. But whether the answer be treated as evidence or not, it will always, when denying the allegations of the bill, force the plaintiff to prove those allegations. Though in the view we have taken of the meaning of secs. 146 and 147, the answers to the original bill cannot be treated as evidence against the plaintiffs or for the defendants because they were not read by the plaintiffs at the hearing and because the case was not submitted on bill and answer; they were sufficient to cast upon the plaintiffs the burden of proof; and as the plaintiffs adduced no proof whatever to support the allegations of the bill as originally filed, they were obviously not entitled to the relief sought under that bill.

But sec. 147 expressly provides that if the plaintiff shall require an answer under oath with regard to specified interrogatories, the replies directly responsive to the interrogatories shall be evidence in the defendant's favor. That the section means this cannot admit of doubt. The reply made by Davis to the first interrogatory propounded to him is directly and distinctly responsive. When asked *why* he did not return in the inventory the alleged debt due by Fehsenfeld to Mrs. Davis, he answered that he made no such return *because no such debt was due to her at the time of her death.* This answer was evidence for the defendants; and there being nothing in the record to contradict it, the bill ought to have

been dismissed had the case then gone to a hearing. But the seventh paragraph was added to the bill by an amendment which has already been transcribed. The defendants answered, as has been stated, and Fehsenfeld replied to the specified interrogatories propounded to him. The answers to this additional paragraph, and nothing but these answers are relied on by the plaintiffs to support the averments of the amended bill. These answers were read against the defendants at the hearing, and under the interpretation we have placed on sec. 146, their averments become evidence against the plaintiffs, if those averments are responsive to the bill. Just here the chief contention arises. On the part of the plaintiffs it is insisted that such parts of the answers of the defendants as admit that a debt once had been due by Fehsenfeld to Mrs. Davis are evidence against the defendants, but that all the rest of the answers on the same subject and the replies to the specified interrogatories propounded to Fehsenfeld, present purely matter of avoidance, not responsive to the averments of the bill, and therefore, are not evidence against the plaintiffs or for the defendants.

There can be no doubt that matters of defence set up strictly by way of avoidance of a liability once admitted, must be established by proof before they can avail to defeat the relief sought by the bill. As to what is and what is not matter of avoidance, as contradistinguished from matter directly responsive to the averments of the bill, depends, in a great measure, upon the structure and the objects of the bill itself; and also largely upon the charges which the defendants are required by the bill to answer. A flat admission of liability by a defendant cannot be neutralized by new facts set up by him by way of discharge of that liability. But when the converse of the facts which evidence the discharge are averred against the defendant in the bill, or, the defendant is specifically interrogated in regard to such facts, and the bill is not one for a general account, the matters of discharge asserted in denial of the contrary averments or in reply to the special interrogatories, are not new

matters of defence by way of avoidance. Matter of affirmance in an answer is not necessarily new matter. " There is no sound distinction in this respect between matter of denial and matter of affirmance, if the latter be in relation to a particular upon which the bill requires the defendant to make an answer. The true distinction is between allegations upon those subjects upon which the bill requires some answer, and allegations of new matter not stated or inquired of in the bill, but introduced by the defendant, in his defence." 18 N. Hamp., *supra*.

As an illustration of the proposition that the affirmation of exculpatory facts may not be a mere averment of matter in avoidance, we refer to the case of *Gardiner* v. *Hardey*, 12 G. & J. 365. The executor and the executrix of a decedent were sued at law upon a claim duly passed by the Orphans' Court. One was returned *cepi* and confessed judgment. The other was returned *non est*, but was subsequently arrested and then also confessed judgment in total ignorance of any defence to the action. Subsequently, and after it was too late to move for a new trial, the executrix discovered a receipt for the money claimed of her—the receipt having been given nine years before the suit at law was instituted. Upon a bill filed to obtain relief the fact of the receipt being admitted by the answer and there being no proof adduced to avoid it, the judgment was stricken out. The defendant in the equity case after admitting the validity of the receipt set forth certain facts in explanation and avoidance of the receipt, upon which receipt the plaintiff relied to show payment of the claim upon which the judgment was founded. The question turned entirely upon the inquiry whether these statements were responsive to the allegations or interrogatories in the bill. The bill asserted that the receipt had been given for the same cause of action on which the judgment had been rendered. The interrogatory propounded to the defendant inquired whether he executed the receipt and whether said receipt did not include the balance due of $419.66 for which he obtained the judgment against

the executors. " To both of these inquiries," said the Court, " he answers distinctly and fully in the affirmative; and then as matter in defence and in avoidance of the receipt, proceeded to state a variety of facts, none of which were charged in the bill, and in relation whereto he had not been interrogated. *Had the interrogatory called on him to state whether he had not been paid the* $419.66, *for which the receipt had been given, the door would have been opened* to the disclosures he made, and they might well be regarded as impairing the weight attached to the receipt. *But not being responsive to the bill*, nor sustained by the proof at the final hearing of the cause, they are entitled to no consideration." It is obvious, therefore, that the mere circumstance that the averments of the answer are affirmative and not strictly negative in character, cannot alone be relied on as furnishing a test as to whether those averments are averments of new matter in defence by way of avoidance, or strictly responsive averments falling literally within the purview of the statute making them evidence against the plaintiff, when read by him at the hearing. Manifestly in dealing with such a question a Court of Equity is governed by the *substance* and the *relevancy* of the averments of the answer, rather than by the mere *form* in which they are clothed. If responsive to the bill and directly in reply to it, the naked fact that they are presented in the form of affirmative assertion rather than as mere negative contradictions, can make, on principle, no possible difference. A failure to observe this fact is calculated to produce confusion, when in a given case it becomes necessary to apply the conceded doctrine that new matter relied on by way of avoidance, to be effective, must be proved by competent evidence.

We must turn to the amended or seventh paragraph of the bill to ascertain what the precise matter which it sought to put in issue, is. We have already quoted the paragraph. Stripped of unnecessary verbiage it charges two things: *First*, that Catharine Davis lent Fehsenfeld in 1890 forty-five hundred dollars; *secondly*, that no part of this sum was ever repaid to the lender and that Davis,

the administrator, has not returned any part thereof in
the estate of the decedent.  The defendants were re-
quired to answer these charges—and to answer them
under oath.  They admit the loan, and whilst they say
no part thereof was repaid to Catharine Davis, they
set forth, in the same connection, facts showing a pay-
ment *in law;* and the question is, whether these facts
showing a payment are matters of defence by way of
avoidance, because of the concurrent admission that no
payment had been made; or whether they are, in view
of the averments of the bill, responsive to those aver-
ments.  Whether a given state of facts constitutes a
payment is a conclusion of law.  The assertion, in the
face of those facts, that no payment was made, when in
law the facts constitute a payment, is the assertion of
an erroneous conclusion of law, and not the admission
of a fact.  If the facts show a payment, then the facts
though affirmatively alleged in the answer are a reply to
and a denial of the allegation in the bill that no part of
the loan had ever been repaid.  You say in the bill, this
loan has never been repaid: The defendant in answer
sets forth certain facts that, in law, evidence a payment.
That is as fully and effectually denying that there was
no repayment, as if the defendant had simply negatived
the charge of the bill; and this too even though he has
erroneously characterized the legal consequence flowing
from those facts as not a payment.  The obvious mean-
ing of the answer is, not that the loan was never repaid,
but that Fehsenfeld did not pay the *money* to Catharine
Davis in her lifetime.  This is true, but it is entirely con-
sistent with the conclusion that the debt was *legally* paid
to her in the way set forth in the answer.  Inasmuch as
this paragraph of the bill puts in issue the question of
payment,—denies that the debt had in reality been re-
paid,—the statements in the answers setting forth facts
which in law show that a payment had been made, are ob-
viously *not new matters of avoidance,* so far as this par-
ticular paragraph of the bill is concerned, however they
might have been treated had the structure of the para-
graph been different.  These averments of the answers

are strictly responsive to the allegations of the bill, and the bare fact that they are in form affirmative and not negative does not, in view of the terms of the paragraph which they are designed to answer, make them new matters stated by way of avoidance of a conceded indebtedness. The indebtedness to the *estate* of Catharine Davis is unequivocally denied in the answers to the original bill. These answers are still in the case. The answers to the amended paragraph do not supersede them, but on the contrary affirmatively show not only that there is no indebtedness to the estate, but they point out *why* there is none.

We have said the answers to the seventh paragraph show a payment, in law, of the forty-five hundred dollars indebtedness. Much of the argument of the counsel for the appellees was devoted to the proposition that the facts relied on showed not a payment, but a mere parol *gift* of the debt unaccompanied by a delivery of the evidence of it, and therefore, that the alleged *gift* was ineffectual. But it must be borne in mind that the defendants were not seeking to set up a *gift* of the debt to Harry B. Davis as an independent matter of defence. They were replying to the allegations that the debt had not been paid, and *that it was still due* to the estate of Catharine Davis. The *method* of payment is a part of the *fact* of payment. The payment was by means of a novation. It was perfectly competent to Mrs. Davis to give the debt to her son, and when pursuant to her direction, a new note was made out payable to the son, and the old note was surrendered to the maker, the gift to the son was complete, and the novation which operated as a payment of the original note was consummated. The novation being complete the debt of Fehsenfeld to Catharine Davis was extinguished. The parts of the answers setting forth this *method* of payment were constituent and inseparable portions of the sentences which the appellees claimed alone to read; and the reading of a part brought before the Court, as evidence for the defendants, all the interwoven and dependent sentences pertaining to the subject-matter inquired of by the bill—the issue of repayment.

The line of cases cited by the appellees and beginning with *Ringgold* v. *Ringgold*, 1 H. & G. 11, is in perfect accord with the views we have just expressed. These cases arose on *general bills* to account. In *Ringgold's case*, the trustees, against whom the bill was filed for an account, set forth in their answers a statement of the trust estate which had been received by them, and a schedule of expenditures made by them, and many of these latter were not evidenced by vouchers. Under this bill and these answers the question was whether the statement of disbursements was evidence for the trustees, and the Court held that it was not because, " The doctrine may then be considered as settled that on *a general bill to account* the answer is no evidence of disbursements." And it is no evidence of disbursements because, as held in *McNeal* v. *Glenn*, 4 Md. 97, " such a bill is no more than a demand upon the defendant to show his receipt and the legal proof of his expenditures." Such being the office of a bill of that character, properly there are no averments in it to which an answer setting forth disbursements is or can be a responsive reply. Or, as concisely and aptly put in the brief of the appellants' counsel: " The bill does not specifically deny the disbursements or charge them to be fraudulent, but simply calls for an account, which in legal effect is a demand for a schedule with vouchers, and nothing more. Such a bill is not construed as calling upon the defendant as a witness for the complainant to prove disbursements." But in the case at bar a particular designated asset was made an issue by the bill—that is, the bill raised the issue as to whether the four thousand five hundred dollar debt was an asset of Catharine Davis at the time of her decease. The bill stated that this debt was an asset and alleged that it had not been returned in the inventory because of the fraudulent conduct of the administrator *pendente lite*. It did more; it specifically required the defendants to answer these allegations under oath. And then upon the hearing *a part* of these answers was read by the plaintiffs. Why would not the replies negativing the statements of the bill be responsive?

It is true the bill says nothing about a *gift* of the debt to Harry B. Davis; but the gift is not relied on as a distinct substantive matter of avoidance; it is a mere circumstance in the chain of facts which go to show that this particular debt was not, as by the bill it was alleged to be, an asset of the decedent's estate.

A case very much in point and aptly illustrating the distinction between a general bill to account and such a bill as the one now before us, is *Morrison Extr.* v. *Grubb,* 23 Grat. 342. The bill was filed by the executors of Morrison and alleged that the testator owned certain bonds which had been in his possession shortly before his death; that after his death these bonds were found in the possession of Grubb, the defendant, and the bill averred that the bonds were the property of Morrison at the time of his death and that they belonged to his estate. The answer denied that the bonds belonged to Morrison when he died, but admitted that he *had* owned them at one time, and it averred that he had delivered them as a gift to the defendant a few days prior to his, Morrison's, death. The Court said: " The allegation in the bill that the bonds in question were the property of the decedent at the time of his death, is not only an averment of the inference of law, but it includes all the facts necessary to such an inference. It is, in fact, an averment that the decedent did no act in his lifetime by which his right of property was extinguished or transferred to the defendant by gift or otherwise. And this allegation is positively denied by the answer. And whilst it admits that the decedent was the owner of the bonds and had possession of them until a few days before his death, it says *uno flatu,* that he transferred and delivered them to him shortly before his death as a gift. We think the whole should be taken together as the answer of the defendant responsive to the allegations of the bill . . . The admission that they were the property of the decedent several days before his death cannot be taken as an admission of the allegation of the bill that they were the property of the decedent at his death, because it is accompanied by the declaration of the de-

fendant that they were afterwards in the lifetime of the decedent delivered to him as a gift."

We hold, then, that all that was said by the defendants in their answers in reply to the averments respecting this debt being an asset of the estate of Catharine Davis was responsive to those averments, and that part of the answers having been read by the plaintiffs against the defendants, at the hearing, the whole was admissible. No effort having been made to overcome these answers by proof, the bill ought to have been dismissed.

There is one other observation yet to be made. The response of Fehsenfeld to the specified interrogatories propounded to him was undoubtedly evidence for the defendants under sec. 147, Art. 16 of the Code. With this response unchallenged by any countervailing evidence the decree appealed from ought not to have been passed.

This view of the case dispenses with the necessity of examining the evidence adduced, and entirely relieves us from considering its admissibility.

For the reasons we have given the decree will be reversed and the bill will be dismissed.

*Decree reversed and bill dismissed
with costs above and below.*

(Decided June 30th, 1898.)